TARRANT COUNTY WATER CONTROL AND IMPROVEMENT
DISTRICT NUMBER ONE, Petitioner

v.

WILL WILSON, ATTORNEY GENERAL OF TEXAS, Respondent

No. A-8969.   Decided June 13, 1962
358 S.W. 2d 368

Brown, Herman, Scott & Young, Fort Worth, McCall, Parkhurst, Crowe, McCall & Horton, Dallas, for relator.

Howard Mays, Asst. Atty. Gen., Austin, for respondent.

ORIGINAL MANDAMUS PROCEEDING

CHIEF JUSTICE CALVERT delivered the opinion of the Court.

Water District seeks in this proceeding to compel the Attorney General to approve an issue of its bonds.

The Attorney General has declined to approve the issue on the ground that issuance of the bonds and creation of the indebtedness evidenced thereby has not been authorized by vote of the qualified property tax-paying voters of the district as required by Section 59 of Article 16 of the Constitution of the State of Texas. Vernon's Texas Constitution. A brief resume of the facts is essential to an understanding of the Attorney General's position.

■ Water District, situated entirely within Tarrant County, was created in 1924. On October 30, 1959, the district's Board of Directors ordered an election to determine whether the district should be authorized to issue its bonds in the sum of $55,000,000.00 for the construction of facilities, and whether it should be authorized to pledge revenues and levy and collect ad valorem taxes on all taxable property in the district for the payment of the bonds and interest thereon. The election was duly held on December 2, 1959, and the authority sought was granted. Under the authority given, the district issued its bonds in the sum of $6,000,000.00 on February 25, 1960. Those bonds were sold and delivered to purchasers and are now outstanding.

In 1957 the Legislature enacted a statute authorizing Water District to annex territory situated in Tarrant County and providing a procedure therefor. See Acts 1957, 55 Leg. Ch. 268, p. 569. The Board of Directors is empowered to act on behalf of the district. If the Board finds that annexation of certain territory "would be to the interest of the territory and the District", it may request the Commissioners Court to annex such territory on such conditions, if any, as the Board may stipulate. The Act then provides for an annexation election to be held in the territory to be annexed, with authority to submit also at the election "a proposition for the assumption of its [the annexed territory's] part of the tax-supported bonds of the District then outstanding and those theretofore voted but not yet sold, and for the levy of an ad valorem tax on taxable property in said territory along with the tax in the rest of the District for the payment thereof."

Following the prescribed statutory procedure, an election was ordered and was held in the Village of Edgecliff on two propositions, summarized as follows: (1) Whether the territory constituting the Village of Edgecliff should be annexed to Tarrant County Water Control and Improvement District No. 1, and (2) whether the annexed territory should assume its part of the outstanding tax-supported bonds and of those theretofore authorized by the voters of the District but not yet issued. There was a favorable vote on both propositions. Thereafter the Board of Directors of Water District directed issuance of its bonds aggregating $13,500,000.00. It is this issue the Attorney General has declined to approve. As heretofore indicated, declination is rested solely on the ground that the issue has not been authorized as required by Section 59, Article 16 of the Constitution.

Section 59 of Article 16 is the conservation amendment to the Constitution and was adopted in 1917. Paragraph (b) of the Section authorizes the creation of conservation and reclamation districts "as governmental agencies and bodies politic and corporate". Paragraph (c) provides:

"The Legislature shall authorize all such indebtedness as may be necessary * * * and all such indebtedness may be evidenced by bonds of such conservation and reclamation districts, to be issued under such regulations as amy [may] be prescribed by law * * *; provided the Legislature shall not authorize the issuance of any bonds or provide for any indebtedness against any reclamation district unless such proposition shall first be submitted to the qualified property tax-paying voters of such district and the proposition adopted."

The position of the Attorney General is that under the language of the proviso of paragraph (c) a district enlarged by annexation may not issue bonds unless the issue is authorized by a vote of the qualified property tax-paying voters of the district *as it is constituted at the time of issuance,* and that the Legislature is without power to circumvent the constitutional requirement for a district-wide election by authorizing annexed territory by election to assume "its part" of an issue authorized by election before annexation. Thus, the only question presented is whether because of the annexation a second district-wide election is prerequisite to the validity of the bond issue. We think not.

The underlying reason for refusal by the Attorney General to approve the bond issue is stated by him as follows:

"There is no way to determine whether the original election held in the District on December 2, 1959, would have carried, and we can not say, as a matter of law, that it would have carried if the voters at that time had known that other areas would later be annexed and participate in the ownership and benefits of the project to be constructed by the issuance of the bonds. Conceivably, through the procedure followed, the original District could be doubled or tripled in size resulting in the dilution of the rights of the tax-paying voters of the original District. Under such procedure this particular group of voters might be forced to stand by powerless to prevent the bulk of the improvements being located at some distant place not even part of the original District."

That reasoning seems to argue more against the wisdom of

permitting the district to annex territory without a favorable vote of the qualified voters of the original district than against validity of the bond issue. An answer to the argument is that the annexation statute was in existence when the voters of the original district authorized issuance of the bonds, and they are presumed to have known that other territory might be added without their approval by vote.

The only case cited by the Attorney General is Brown County Water Improvement District No. 1 v. Austin Mill and Grain Co., 135 Texas 140, 138 S.W. 2d 523. In that case the district directors sought to levy and collect a maintenance tax without an authorizing election. The power to do so was denied by this Court on the ground that such a tax would constitute a lien on property in the district and would thus create an indebtedness within the meaning of the proviso quoted above. The decision does not rule the question in this case.

Water District cites no cases in point. Several cases from other jurisdictions are cited for the proposition that constitutional prohibition against school districts creating indebtedness without an election does not prohibit reorganized or enlarged school districts from assuming existing indebtedness without an authorizing election. But that is not the problem here.

■ Our conclusion that an election in the enlarged district is not prerequisite to the power to issue the bonds stems from recognition of the corporate character of the district. Indebtedness is not created until bonds are issued and sold, Town of Freeport v. Sellers, 144 Texas 389, 190 S.W. 2d 813; City of Austin v. Valle, Texas Civ. App., 71 S.W. 414, writ refused, but the Board of Directors of the corporate entity was empowered by the 1959 election to create indebtedness to the extent of $55,000,000.00 by the only voters then having a right to vote. The $13,500,000.00 issue will not create an indebtedness in excess of that sum. We find nothing in the Constitutional provision which would authorize us to say that the power once given is nullified by the subsequent addition of property to, or inclusion of other voters in, the district.

This disposes of the only objection to the bond issue raised by the Attorney General and we assume he will approve the bond issue in compliance with this opinion. If he should fail to do so, writ of mandamus will issue as prayed.

Opinion delivered June 13, 1962.