**IN RE LAZY W DISTRICT NO. 1, Relator**

NO. 15–0117

Supreme Court of Texas.

Argued March 9, 2016

Opinion delivered: May 27, 2016

M. Keith Dollahite, M. Keith Dollahite, P.C., Tyler TX, Evan (Van) Lane Shaw, Colleen Meyer, Law Offices of Van Shaw, Dallas TX, Martin Ray Bennett, Kugle Skelton & Bennett, P.C., Athens TX, Robert Greenlaw Haiman, Remington Hotels, LP, Dallas TX, for Relators.

Barbara E. Rosenberg, Assistant City Attorney, North Dallas TX, Rance L. Craft, Office of the Attorney General, Austin TX, for Amicus Curiae parties.

Hal R. Ray Jr., Michael L. Atchley II, Pope, Hardwicke, Christie Schell, Kelly & Ray, LLP, Fort Worth TX, Tom Henson, Ramey & Flock, P.C., Tyler TX, Real Parties in Interest.

Monty Bennett, Intervenor, pro se.

Christopher Daniel Tinsley, Attorney at Law, Athens TX, Jeffrey Lee Coe, Law Office of Jeffrey L. Coe, Palestine TX, Other Interested Parties.

CHIEF JUSTICE HECHT delivered the opinion of the Court.

This original mandamus proceeding involves two governmental entities, one of which petitioned for condemnation of a water pipeline easement across the other's land. The condemnee asserted governmental immunity, and the trial court refused to proceed further without deciding whether the case should be dismissed. The next step would be for the trial court to appoint special commissioners to make an initial determination of the value of the property to be taken. The trial court is not to interfere in the commissioners' proceedings and does not become involved again until the commissioners file their award. The court of appeals granted mandamus relief, holding that the trial court must defer ruling on the immunity issue until after the commissioners file their award and a party objects.[1] We disagree and conditionally grant relief.

The Tarrant Regional Water District ("the Water District") supplies water to some two million Texans across 11 counties, including residents of the cities of Fort Worth and Arlington. Created in 1924,[2] the Water District is a governmental agency[3] with the power of eminent domain.[4] In 2010, after years of studies

---

1. ——— S.W.3d ——— (Tex.App.–Tyler 2015, orig. proceeding).

2. *Tarrant Cty. Water Control & Improvement Dist. No. One v. Wilson*, 163 Tex. 522, 358 S.W.2d 368, 368 (1962) (original proceeding); *Tarrant Cty. Water Control & Improvement Dist. No. 1 v. Pollard*, 118 Tex. 138, 12 S.W.2d 137, 138 (1929). The Water District was officially given its current name in 2001. Act of May 15, 2001, 77th Leg., R.S., ch. 433, § 1, 2001 Tex. Gen. Laws 830 (amending 1957 act).

3. TEX. CONST. art. XVI, § 59(b) (districts created under this provision "shall be governmental agencies"); *id.* § 59(c–1) (for the Tarrant Regional Water District, among others, "the Legislature may authorize indebtedness payable from taxes as may be necessary" for the development of certain parks and recreational facilities).

4. TEX. WATER CODE §§ 11.033, 49.222.

and negotiations, the Water District and the City of Dallas approved a financing agreement to build a 150-mile pipeline to transport water owned by Dallas in Lake Palestine to the Dallas/Fort Worth area to meet its growing needs. This undertaking—the Integrated Pipeline Project—is expected to take 20 years to complete and cost $2.3 billion.[5] Construction began in 2014.

The proposed route crosses a corner of the 1,000-acre Lazy W Ranch located some five miles northwest of the City of Athens in Henderson County. Project plans call for a 150-foot-wide underground easement, about 3,375 feet long, covering 11.623 acres of the Ranch. The Ranch's principal, Monty Bennett, a Dallas hotelier, opposed running the pipeline through the Ranch and promised to "vigorously fight" it. In 2011, he obtained legislation creating the Lazy W District No. 1 ("the Lazy W"), a municipal utility district.[6] The Lazy W is comprised entirely of the Ranch, which it acquired in 2013. It owns no other property. Bennett is president of the Lazy W's board of directors. In March 2013, Bennett sued the Water District for violating the Texas Open Meetings Act. A divided court of appeals dismissed the action on the ground that the Water District was immune from suit.[7] Also in 2013, Bennett supported a slate of three candidates for the Water District's five-member board, two of whom lost to incumbents.[8] In 2015, he tried again, unsuccessfully, to replace two incumbent board members who support the Project's use of the Ranch.[9] Bennett also dedicated a small cemetery on the Ranch in the proposed path of the pipeline to thwart the Water District's plan.[10]

The Water District offered the Lazy W $169,218 for the easement, and when the offer was rejected, petitioned for condemnation in the district court. The day after the petition was filed, without notice to the Lazy W, the district court appointed three special commissioners to determine the value of the proposed easement.[11] When the Lazy W learned of the order, and

5. Bill Hanna, *Tarrant water district gets $440 million to build pipeline*, FORT WORTH STAR-TELEGRAM, July 23, 2015, http://www.star-telegram.com/news/local/community/fort-worth/article28452094.html.

6. Act of May 25, 2011, 82nd Leg., R.S., ch. 866, § 1, 2011 Tex. Gen. Laws 2197 (codified at TEX. SPEC. DISTS. CODE §§ 8380.001–.203). The Lazy W reportedly has since been converted to a water control and improvement district, retaining certain powers provided to municipal utility districts.

7. *Tarrant Reg'l Water Dist. v. Bennett*, 453 S.W.3d 51, 57–59 (Tex.App.–Fort Worth 2014, pet. denied) (interlocutory appeal).

8. Bill Hanna, *Dallas businessman keeps up fight against Tarrant Regional Water District*, FORT WORTH STAR-TELEGRAM, Apr. 26, 2014, http://www.star-telegram.com/news/local/community/fort-worth/article3854669.html.

9. Hanna, *Tarrant water district gets $440 million, supra* note 5; Bill Hanna, *Dallas businessman donated more than $235,000 to Tarrant Regional Water District candidates*, FORT WORTH STAR-TELEGRAM, July 19, 2014, http://www.star-telegram.com/news/local/community/fort-worth/article3865864.html.

10. Kathi Nailling, *Pipeline through HC could be both blessing or curse*, THE ATHENS REVIEW, July 17, 2014, http://www.athensreview.com/news/local_ news/pipeline–through–hc–could–be–both–blessing–or–curse/article_–9ed8d010–9a3a–5b57–bf0a–93a5ed5d755e.html; Hanna, *Tarrant water district gets $440 million, supra* note 5. *See* TEX. HEALTH & SAFETY CODE § 711.035(d), (g) (a pipeline may not be placed through, over, or across part of a dedicated cemetery without the prerequisite consent); *see also* TEX. WATER CODE § 49.224 (authorizing the condemnation of cemeteries only for the creation of lakes and reservoirs).

11. *See* TEX. PROP. CODE § 21.014.

before the commissioners' hearing, it filed a plea to the jurisdiction, asserting its immunity as a governmental entity [12] and requesting that the appointments be vacated and the petition dismissed. The district court vacated its appointment of the special commissioners and, after briefing and argument, issued an order declining to appoint special commissioners before hearing and ruling on the Lazy W's plea.

The Water District sought mandamus relief in the court of appeals. That court held that "the trial court was without jurisdiction to refuse to appoint special commissioners", that the Lazy W's plea of immunity was premature, and that the trial court's only course was to ignore the plea until after an objection to the commissioners' award.[13] The court of appeals directed the trial court to appoint special commissioners and allow them to proceed.[14]

The Lazy W petitioned this Court for mandamus relief against the court of appeals. We stayed all proceedings in the trial court [15] and set the matter for oral argument.[16]

The exercise of eminent domain authority is governed by Chapter 21 of the Property Code.[17] The condemnor must first make a bona fide offer to acquire the property.[18] If the condemnor and the landowner cannot agree on the value of the property, the condemnor may file a petition containing specified allegations [19] in the proper court [20] in the county in which the land is located.[21] The condemnor must send the landowner a copy of the petition by certified mail.[22] Section 21.014(a) provides in part:

> The judge of a court in which a condemnation petition is filed or to which an eminent domain case is assigned shall appoint three disinterested real property owners who reside in the county as special commissioners to assess the damages of the owner of the property being condemned.[23]

The special commissioners hold a hearing, gather evidence, determine just compensation for the landowner, and file their award with the court.[24] The landowner may, but

**12.** TEX. SPEC. DISTS. CODE § 8380.002. Under the statute that created it, the Lazy W does not have the power of eminent domain outside the district. *Id.* § 8380.106.

**13.** —— S.W.3d ——, —— (Tex.App.–Tyler 2015, orig. proceeding).

**14.** *Id.* at ——.

**15.** 58 Tex.Sup.Ct.J. 476 (Mar. 11, 2015).

**16.** 59 Tex.Sup.Ct.J. 252 (Jan. 19, 2016).

**17.** TEX. PROP. CODE §§ 21.001–.103.

**18.** *Id.* § 21.0113(a) ("An entity with eminent domain authority that wants to acquire real property for a public use must make a bona fide offer to acquire the property from the property owner voluntarily.").

**19.** *Id.* §§ 21.012(b), .0121.

**20.** *Id.* § 21.012(a) ("If an entity with eminent domain authority wants to acquire real property for public use but is unable to agree with the owner of the property on the amount of damages, the entity may begin a condemnation proceeding by filing a petition in the proper court.").

**21.** *Id.* § 21.013(a) ("The venue of a condemnation proceeding is the county in which the owner of the property being condemned resides if the owner resides in a county in which part of the property is located. Otherwise, the venue of a condemnation proceeding is any county in which at least part of the property is located.").

**22.** *Id,* § 21.012(c) ("An entity that files a petition under this section must provide a copy of the petition to the property owner by certified mail, return receipt requested.").

**23.** *Id.* § 21.014(a).

**24.** *Id.* §§ 21.014–.016, .041–.043, .047–.048.

need not, participate in proceedings before the commissioners.[25] If no party timely files an objection to the award, the trial court adopts the commissioners' findings as the judgment of the court.[26] If a timely objection is filed, the trial court must vacate the award, cite the parties adverse to the condemnor, and proceed to try all matters in issue as in any other civil cause.[27] The condemnor is nevertheless entitled to immediate possession of the property on payment of the commissioners' award.[28]

The condemnor may move to dismiss the proceeding, without limitation, before the commissioners issue their award.[29]

We have said that condemnation proceedings have two parts. The first part, involving the commissioners, we have characterized as administrative.[30] It is essentially an official, compulsory mediation of the value dispute with the goal of avoiding a trial. We have said that trial courts lack jurisdiction to interfere with proceedings pending before the commissioners.[31] The

**25.** *Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 179–180 (Tex.2004).

**26.** TEX. PROP. CODE § 21.061 ("If no party in a condemnation proceeding files timely objections to the findings of the special commissioners, the judge of the court that has jurisdiction of the proceeding shall adopt the commissioners' findings as the judgment of the court. . . . ").

**27.** *Id.* § 21.018(b) ("If a party files an objection to the findings of the special commissioners, the court shall cite the adverse party and try the case in the same manner as other civil causes.").

**28.** *Id.* § 21.021(a) ("After the special commissioners have made an award in a condemnation proceeding, except as provided by Subsection (c) of this section, the condemnor may take possession of the condemned property pending the results of further litigation if the condemnor: (1) pays to the property owner the amount of damages and costs awarded by the special commissioners or deposits that amount of money with the court subject to the order of the property owner; (2) deposits with the court either the amount of money awarded by the special commissioners as damages or a surety bond in the same amount . . . conditioned to secure the payment of an award of damages by the court in excess of the award of the special commissioners; and (3) executes a bond that has two or more good and' solvent sureties approved by the judge . . . and conditioned to secure the payment of additional costs that may be awarded to the property owner by the trial court or on appeal.").

**29.** *Id.* § 21.019(a) ("A party that files a condemnation petition may move to dismiss the

proceedings, and the court shall conduct a hearing on the motion. However, after the special commissioners have made an award, in an effort to obtain a lower award a condemnor may not dismiss the condemnation proceedings merely to institute new proceedings that involve substantially the same condemnation against the same property owner."); *see FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 626 (Tex.2008) (condemnor's post-award amendment of its petition to reduce the size of its proposed acquisition did not deprive the trial court of jurisdiction, but condemnor's effective abandonment of its original claim could serve as the basis for an award of fees and expenses under Section 21.019(b)).

**30.** *Amason v. Nat. Gas Pipeline Co.*, 682 S.W.2d 240, 241 (Tex.1984) ("The Texas land condemnation scheme is a two-part procedure involving first, an administrative proceeding, and then if necessary, a judicial proceeding."); *Pearson v. State*, 159 Tex. 66, 315 S.W.2d 935, 936–937 (1958) ("An action to condemn . . . is a special statutory proceeding, wholly administrative in nature, at least until the commissioners' decision is filed with the county judge.").

**31.** *E.g.*, *Ex parte Edmonds*, 383 S.W.2d 579, 580 (Tex.1964) ("It seems to be well settled in our state that the district court is without jurisdiction to enjoin the [administrative] proceeding in a condemnation suit."); *State v. Giles*, 368 S.W.2d 943, 947 (Tex.1963) ("The district court has no jurisdiction to interfere with the progress of a condemnation proceeding before the Commissioners of condemnation because of the disqualification of one of the Commissioners.").

second part of condemnation proceedings, following a proper objection to the commissioners' award, we have deemed judicial.[32] The commissioners' proceedings are ignored[33] and the court has jurisdiction to proceed as in any other case.[34]

■ Based on these precedents, the Water District contends that the trial court in this case cannot rule on the Lazy W's plea to the jurisdiction until the commissioners issue their award. The Water District also points to Section 21.014, requiring that when a condemnation case is filed, the court "shall" appoint commissioners. The Water District argues that this provision limits a court's jurisdiction from the time a condemnation case is filed until the commissioners' award issues to one thing: appointing commissioners. We disagree.

Section 21.014 is certainly mandatory, but it is not restrictive. It requires the court to appoint commissioners, but it does not forbid any other action. The court need not make those appointments, for example, when the condemnor immediately dismisses the case. Statements in our opinions can be read broadly to suggest that the administrative phase of the proceeding begins immediately when the case is filed and must be free of judicial interference.[35] But we have also held that a condemnee can challenge the trial court's jurisdiction to appoint the special commissioners if the condemnation petition fails to properly identify the land sought to be condemned.[36] Also, if a petition is filed in an improper court, that court is not authorized to appoint special commissioners, and any order to that effect could be

**32.** *Amason,* 682 S.W.2d at 241.

**33.** *See PR Invs. & Specialty Retailers, Inc. v. State,* 251 S.W.3d 472, 476 (Tex.2008) ("[T]he proceedings that occurred before the special commissioners are not considered, and the case is tried to the court de novo."); *Amason,* 682 S.W.2d at 242 ("Upon the filing of objections, the Special Commissioners' award is vacated and the administrative proceeding converts into a normal pending cause in the court with the condemnor as plaintiff and the condemnee as defendant.").

**34.** *See, e.g., John v. State,* 826 S.W.2d 138, 141 n. 5 (Tex.1992) (per curiam) ("Filing timely objections invokes the jurisdiction of the trial court and transforms the administrative proceeding into a pending cause."); *Pearson,* 315 S.W.2d at 937 ("By the express terms of Section 6, the filing of timely objections confers jurisdiction upon the county court to hear and determine the issues in the exercise of its judicial powers."). *See also City of Tyler v. Beck,* 196 S.W.3d 784, 786 (Tex.2006) (per curiam) ("If the objecting party fails [to serve the adverse party] within a reasonable time, the trial court should dismiss the objections for want of prosecution and reinstate the special commissioners' award.").

**35.** *E.g., Amason,* 682 S.W.2d at 242 ("From the time the condemnor files the original statement seeking condemnation up to the time of the Special Commissioners' award, these initial proceedings are administrative in nature.").

**36.** *Parker v. Ft. Worth & D.C. Ry. Co.,* 84 Tex. 333, 19 S.W. 518, 519 (1892) ("The statute requires the applicant for condemnation of land 'to state in writing the real estate and property sought to be condemned,' and, if this be not so done as to identify the land to be taken, the jurisdiction of the tribunal having power to condemn never attaches, it matters not what notices of the proceeding may be given."); *see also State v. Nelson,* 160 Tex. 515, 334 S.W.2d 788, 790 (1960) ("It has accordingly been held that the jurisdiction of the tribunal having power to condemn does not attach unless the statement includes a legally sufficient description of the property sought to be condemned."). *But see Tonahill v. Gulf States Utilities Co.,* 446 S.W.2d 301, 302 (Tex.1969) (per curiam) (stating that the trial court erred by refusing to appoint special commissioners on the ground that the petition did not adequately identify the condemnee's property).

deemed void.[37]

■ "Courts *always* have jurisdiction to determine their own jurisdiction".[38] "[A]ll courts bear the affirmative obligation 'to ascertain that subject matter jurisdiction exists regardless of whether the parties have questioned it.' "[39] A trial court "must determine at its earliest opportunity whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed."[40] We have never held that a trial court in a condemnation case is powerless to determine its own subject matter jurisdiction before appointing commissioners. The Property Code does not limit the trial court's power or responsibility to determine its jurisdiction, nor do we think it could. For the Legislature to attempt to authorize a court to act without subject matter jurisdiction would violate the constitutional separation of powers.[41]

■ As our cases reflect, it is important that the special commissioners convene and render an award expeditiously and without interference from the trial court. But the special commissioners' proceeding should not be a probable waste of time and effort. Governmental immunity from suit "implicates a court's subject-matter jurisdiction over pending claims, and without jurisdiction the court cannot proceed at all in any cause".[42] The trial court had the obligation to consider the Lazy W's assertion of immunity when the plea to the jurisdiction was filed.[43] We do not hold that a trial court must make an early ruling in every situation, only that the trial court did not abuse its discretion in determining to do so here.[44] Because the trial court did not abuse its discretion, the court of appeals did, in granting mandamus relief.[45] We intimate no view on whether the Lazy W is immune from suit. We have never decided whether a governmental entity is immune from suit to condemn its property,[46] and we need not do so today.

---

37. In *Pinnacle Gas Treating, Inc. v. Read,* 160 S.W.3d 564, 566 (Tex.2005) (per curiam), we held that district courts in the same county have "concurrent jurisdiction" over a condemnation petition such that the appointment of commissioners by one district court in a case filed before a different district court is not void for lack of jurisdiction. Our analysis assumed that there is a jurisdictional prerequisite prior to the appointment of the special commissioners. *Id.*

38. *Houston Mun. Emp. Pension Sys. v. Ferrell,* 248 S.W.3d 151, 158 (Tex.2007) (emphasis added).

39. *City of Houston v. Rhule,* 417 S.W.3d 440, 442 (Tex.2013) (per curiam) (quoting *In re United Servs. Auto. Ass'n,* 307 S.W.3d 299, 306 (Tex.2010)).

40. *Tex. Dept. of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004).

41. *See* TEX. CONST. art. II, § 1.

42. *Zachry Constr. Corp. v. Port of Houston Auth.,* 449 S.W.3d 98, 105 (Tex.2014) (internal quotations and citation omitted).

43. We do not suggest that a trial court should consider other sorts of dilatory pleas that do not challenge the court's power to proceed.

44. An assertion of immunity may necessitate a more extensive investigation of the circumstances than a trial court can make in the initial stages of a condemnation proceeding. *See Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000) ("Whether a determination of subject-matter jurisdiction can be made in a preliminary hearing or should await a fuller development of the merits of the case must be left largely to the trial court's sound exercise of discretion.").

45. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985).

46. *See Oncor Elec. Delivery Co. v. Dallas Area Rapid Transit,* 369 S.W.3d 845, 849 (Tex. 2012) ("We assume, without deciding, that governmental entities are immune from condemnation suits.").

We conditionally grant the writ of mandamus and direct the court of appeals to promptly vacate its February 11, 2015 order conditionally granting mandamus relief. The writ will issue only if the court of appeals does not comply.