COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
| TRIPLE CROWN MOVING AND STORAGE, LLC, | | No. 08-19-00264-CV |
| | § | |
| | | Appeal from the |
| Appellant, | § | |
| | | County Court at Law No. 6 |
| v. | § | |
| | | of El Paso County, Texas |
| JEFF ACKERMAN, | § | |
| | | (TC#2019-CCV00970) |
| Appellee. | § | |

## **O P I N I O N**

Appellee Jeff Ackerman ("Ackerman") sued Appellant Triple Crown Moving and Storage, LLC ("Triple Crown") in a justice of the peace court for damages he allegedly incurred during a move. After the justice court found in favor of Ackerman, Triple Crown filed an appeal to the county court. That appeal, however, was dismissed, because the county court found that Triple Crown had failed to timely pay the costs on appeal as required by Rule 506.1(i) of the Texas Rules of Civil Procedure. In this appeal from that ruling, we agree with Triple Crown that the county court erred in dismissing its appeal because the record establishes that Triple Crown did not receive actual or constructive notice from the county clerk's office of the deadline for paying

the costs.  We therefore reverse the county court's order of dismissal and remand this matter for further proceedings.[1]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Justice Court Proceedings

Ackerman and Triple Crown entered into a contract in which Triple Crown agreed to move Ackerman from Grand Prairie to El Paso, Texas.   Ackerman, acting in a pro se capacity, thereafter sued Triple Crown in a justice court for damages allegedly resulting from the move.   Following a bench trial, the justice court entered a judgment in Ackerman's favor, awarding him $4,556.84, together with interest and costs.   Triple Crown thereafter filed a timely notice of appeal and posted an appeal bond with the justice court on June 11, 2019 in the amount of $9,114.   The justice court thereafter issued an order dated June 18, 2019, granting the appeal.

### B.  The Failure to Pay the Appellate Costs

The El Paso County Clerk sent a notice dated June 25, 2019 to both parties by certified mail, stating that it had received the transcript on appeal from the justice court, and advised Triple Crown that it was required to pay costs of appeal in the amount of $227 within 20 days after notification pursuant to Rule 143a of the Texas Rules of Civil Procedure.   The notice further warned that if the costs were not timely received, the appeal would be "deemed not perfected," and the clerk would return all papers in the matter to the justice court.   The clerk's record contains three certified mail receipts indicating that the notice had been sent to Ackerman at a street address in El Paso, and to both Triple Crown and its attorney, Michael Nevarez, at a post office box in El Paso.

---

[1] Appellee, who is not represented by counsel on appeal, did not file a responsive brief and our decision is therefore based solely on Appellant's brief.

As discussed in more detail below, Triple Crown contends that it never received the notice, and admittedly did not pay the appellate costs by the date specified in the notice. Based on Triple Crown's failure to pay the costs, the county court issued an order on August 13, 2019, dismissing Triple Crown's appeal, and returning the matter to the justice court. The clerk's record reflects that thereafter, on or about September 12, 2019, the notices to both Triple Crown and Nevarez were marked as "return to sender unclaimed unable to forward."

### C. The Motion to Vacate

On September 6, 2019, Triple Crown filed a verified motion to vacate the trial court's dismissal order. In its motion, Triple Crown acknowledged that the county clerk had mailed the notice to pay the appellate costs to the correct post office box as designated in its pleadings, and that the notice had been delivered to the post office box in a timely manner. However, Triple Crown claimed that it did not receive notice of the delivery from the post office, and further did not actually receive the notice prior to the deadline for filing the appellate costs.[2] Triple Crown therefore argued that the notice did not trigger the 20-day deadline for paying the appellate costs. Accordingly, Triple Crown argued that the county court was not deprived of jurisdiction and that it should consequently vacate its order of dismissal.

In support of its motion, Triple Crown attached affidavits from Nevarez and his paralegal, both of whom averred that they never received the clerk's notice, and that they were not aware of the notice until after they received the county court's order of dismissal through the State's e-file system on August 13, 2019. According to their affidavits, shortly after receiving the dismissal order, Nevarez's paralegal searched the county court's website, and learned that the office had not received notification of two other documents in addition to the clerk's notice, including the civil

---

[2] The motion also noted that other than its attorney, Triple Crown's representatives resided in the Dallas area, and did not have access to the El Paso post office box.

3

case information sheet and a copy of the justice court's order granting the appeal. The paralegal averred that she thereafter emailed the clerk's office to request copies of the court documents on August 19, 2019, which the firm received the next day. The paralegal further reported that on August 23, 2019, she attempted to pay the costs on appeal, but the clerk's office refused to accept the payment, advising her that the case had been "closed." In addition, Nevarez averred in his affidavit that on September 3, 2019, he downloaded the "online 'USPS Tracking Results' of the certified mail receipts of the Notice," which indicated that the notice had been delivered and was "Available for Pickup" as of June 28, 2019; he stated, however, that he did not receive any notice of delivery from the post office.

Ackerman thereafter retained an attorney, who filed a response to the motion to vacate, together with a plea to the jurisdiction, contending that the appeal was never perfected due to Triple Crown's failure to pay the appellate costs as directed by the clerk.[3] Ackerman further argued that because the appeal was never perfected, the case had returned to the justice court, which now had jurisdiction over the matter, and that the county court therefore lacked jurisdiction to rule on Triple Crown's motion. At the hearing on Triple Crown's motion, the county court agreed with Ackerman that it did not have jurisdiction to rule on the motion to vacate or to otherwise grant any relief to Triple Crown, believing that jurisdiction had already been returned to the justice court due to Triple Crown's failure to timely pay the costs. The county court therefore declined to rule on the motion, leaving its order of dismissal in place, and Triple Crown thereafter filed an appeal to this Court from the dismissal order.

---

[3] Ackerman's counsel no longer represents him on appeal.

## II. ISSUES ON APPEAL

In its first six issues on appeal, Triple Crown contends that the justice court committed various legal errors when it ruled in Ackerman's favor, contending among other things, that the justice court failed to apply various venue, jurisdiction, and arbitration provisions in the parties' contract. As explained below, however, given the de novo nature of appeals from justice court to county court, a county court does not review alleged legal errors made by a justice court in such an appeal, and those issues are therefore not relevant to our review. However, we do find relevant Triple Crown's last two issues on appeal, which we take in reverse order: (1) whether the county court had jurisdiction to rule on Triple Crown's motion to vacate its dismissal order; and (2) whether the county court should have granted the motion.

## III. THE COUNTY COURT'S JURISDICTION

### A. Standard of Review

Whether a trial court has jurisdiction to decide a matter is a question of law, which an appellate court reviews de novo. *See State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); *Socorro Independent School District v. Hamilton*, 579 S.W.3d 831, 834 (Tex.App.--El Paso 2019, pet. denied). Accordingly, we review de novo the question of whether the county court had jurisdiction to hear Triple Crown's motion to vacate, as well as the question of whether it had jurisdiction to hear the appeal itself. *See Rowe v. Watkins*, 340 S.W.3d 860, 862 (Tex.App.-- El Paso 2011, no pet.) (question of whether county court obtained jurisdiction over appeal from justice court was a question of law to be reviewed de novo); *citing Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *see also Pichini v. Fed. Nat'l Mortgage Ass'n*, 569 S.W.3d 192, 193 (Tex.App.--Houston [1st Dist.] 2018, no pet.) (recognizing that an appellate court reviews a county court's dismissal of an appeal from a justice court under a de novo standard).

**B. Applicable Law**

Appeals from justice court to county court are governed by Rule 506.1 of the Texas Rules of Civil Procedure, which imposes two requirements on the appellant. First, the rule requires an appellant to post an appeal bond within 21 days after judgment is signed by the justice court. TEX.R.CIV.P. 506.1(a). The rule further provides that an appeal is "perfected" upon the filing of the bond. *Id.* at 506.1(h). Second, the rule requires an appellant to pay the costs on appeal to the county court in accordance with Rule 143a. *Id.* at 506.1(a), (i). In turn, Rule 143a provides that:

> If the appellant fails to pay the costs on appeal from a judgment of a justice of the peace or small claims court within twenty (20) days after being notified to do so by the county clerk, the appeal shall be deemed not perfected and the county clerk shall return all papers in said cause to the justice of the peace having original jurisdiction and the justice of the peace shall proceed as though no appeal had been attempted.

TEX.R.CIV.P. 143a. It is well established that compliance with both requirements is jurisdictional, and that a county court therefore lacks jurisdiction to hear an appeal if the requirements are not met. *See Pichini*, 569 S.W.3d at 194; *Watkins v. Debusk*, 286 S.W.3d 58, 60 (Tex.App.--El Paso 2009, no pet.); *Martin v. Fed. Nat'l Mortg. Ass'n*, No. 04-15-00233-CV, 2016 WL 1588517, at *2 (Tex.App.--San Antonio Apr. 20, 2016, no pet.) (mem. op., not designated for publication).

However, when an appellant is able to establish nonreceipt of the clerk's notice to pay the appellate costs, the deadline for filing the costs is not triggered, and the trial court therefore does not lose jurisdiction to hear the appeal. *See, e.g.*, *Martin*, 2016 WL 1588517, at *3 (where record established that appellant's attorney never received notice sent by the county clerk to pay court costs, the county court erred in denying appellant's motion to reinstate appeal from justice court), *citing DePue v. Henderson*, 801 S.W.2d 178, 179 (Tex.App.--Houston [14th Dist.] 1990, no writ) (holding that county court erred in dismissing appeal from justice court for failure to pay costs on

6

appeal where evidence reflected that clerk failed to duly notify appellants or their attorney of the costs).

### C. The County Court had Jurisdiction to Hear the Motion to Vacate

In Issue Eight, Triple Crown contends that the county court erred when it found that it lacked jurisdiction to hear its motion to vacate. We agree.

Undoubtedly, when an appeal is not perfected as required by the above rules, that failure deprives a county court of subject matter jurisdiction to hear the appeal, and the county court must dismiss the appeal. *See Rowe*, 340 S.W.3d at 863. However, when a party raises the issue of whether an appeal was--or was not--perfected, this in effect asks the county court to determine whether it has subject matter jurisdiction over the appeal. And this puts the case in a different procedural posture, as there is a fundamental distinction between a court's jurisdiction to hear the merits of a case and its jurisdiction to determine whether it has jurisdiction in the first instance. *See Dolenz v. Vail*, 200 S.W.3d 338, 341 (Tex.App.--Dallas 2006, pet. denied) (jurisdiction to determine jurisdiction is the court's inherent authority to decide "whether documents filed with it invoke its jurisdiction [which] differs from a court's jurisdiction to dispose of a case on the merits."), *citing Slaton v. State*, 981 S.W.2d 208, 209 n.3 (Tex.Crim.App. 1998); *see also Ezy-Lift of California, Inc. v. EZY Acquisition, LLC*, No. 01-13-00058-CV, 2014 WL 1516239, at *7 (Tex.App.--Houston [1st Dist.] Apr. 17, 2014, pet. denied) (mem. op., not designated for publication) (recognizing distinction between jurisdiction to hear a case and jurisdiction to determine whether jurisdiction exists). It is fundamental that a court always has jurisdiction to determine its own subject matter jurisdiction, or conversely to determine whether it has been deprived of such jurisdiction. *See In re Lazy W Dist. No. 1*, 493 S.W.3d 538, 544 (Tex. 2016); *see also Harris County v. Sykes*, 136 S.W.3d 635, 642 (Tex. 2004); *Unit 82 Joint Venture v. Int'l*

*Commercial Bank of China, Los Angeles Branch*, 460 S.W.3d 616, 623 (Tex.App.--El Paso 2014, pet. denied). In fact, even if the parties do not raise the issue, a court has an "affirmative obligation" to ascertain that subject matter jurisdiction exists and must do so at the earliest opportunity possible. *In re Lazy W Dist. No. 1*, 493 S.W.3d at 544, *quoting City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam). Therefore, when necessary, a trial court should hear evidence to resolve the issue of whether it has subject matter jurisdiction over a case. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 223 (Tex. 2004).

In this case, Triple Crown expressly raised the issue of whether the county court had subject matter jurisdiction to hear its appeal from the justice court, and in particular, presented evidence in its motion to vacate in an attempt to establish that it never received the clerk's notice of appellate costs, and that the timeline for paying the costs was not triggered. The county court was therefore obligated to resolve the question of whether the notice was received, and in turn, whether or not it was deprived of subject matter jurisdiction to hear the appeal. Accordingly, we conclude that the county court erred in declining to rule on Triple Crown's motion to vacate. Triple Crown's Issue Eight is Sustained.

### D. The Alleged Lack of Notice

In Issue Seven, Triple Crown argues that the unrebutted evidence in the record demonstrates that it did not receive actual notice of the appellate costs, and that we may determine, as a matter of law, that the trial court erred by refusing to vacate its order of dismissal. We agree.

When the parties do not dispute the evidence, and instead only dispute the "legal significance of that evidence," an appellate court may determine jurisdictional issues as a matter of law. *See, e.g.*, *Univ. of Tex. Health Sci. Ctr. at Houston v. McQueen*, 431 S.W.3d 750, 757 (Tex.App.--Houston [14th Dist.] 2014, no pet.); *see also Univ. of Tex. at El Paso v. Isaac*, 568

S.W.3d 175, 180 (Tex.App.--El Paso 2018, pet. denied) ("When the jurisdictional facts are undisputed . . . 'we make[ ] the jurisdictional determination as a matter of law based on those undisputed facts.'"). In particular, when as here, the jurisdictional issue centers on whether a party received the requisite notice of a document, if the facts are uncontested, an appellate court may determine whether the notice was received for purposes of determining whether, as a matter of law, jurisdiction exists. *See McQueen*, 431 S.W.3d at 756-757 (where it was undisputed that defendant state hospital did not receive actual notice of the plaintiff's claim in a timely manner as required by the Texas Tort Claims Act, appellate court found, as a matter of law, that the trial court lacked subject matter jurisdiction to hear the plaintiff's claim); *Texas Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 348 (Tex. 2004) ("In many instances . . . actual notice can be determined as a matter of law.").

### 1. *No evidence of actual notice*

A party may receive either actual or constructive notice of a document, and we therefore start our analysis with the question of whether Triple Crown received actual notice of the clerk's certified mailing notifying it of the deadline for paying the appellate costs. Rule 21a provides that all notices, other than citation of service, may be "served in person, mail, by commercial delivery service, by fax, by email, or by such other manner as the court in its discretion may direct." TEX.R.CIV.P. 21a(a)(1). Rule 21a(b)(1) further provides that "[s]ervice by mail or commercial delivery service shall be complete upon deposit of the document, postpaid and properly addressed, in the mail or with a commercial delivery service." TEX.R.CIV.P. 21a(b)(1). Rule 21a therefore sets up a presumption that a document properly addressed and placed in the mail was received by the recipient in a timely manner. *See Cliff v. Huggins*, 724 S.W.2d 778, 780 (Tex. 1987) ("Rule 21a sets up a presumption that when notice of trial setting properly addressed and postage prepaid

9

is mailed, that the notice was duly received by the addressee."); *see also Martin*, 2016 WL 1588517, at *2 (recognizing that a notice "properly sent pursuant to Rule 21a raises a presumption that notice was received."); *see also MM&J Investments LLC v. KTH Investments, LLC*, 602 S.W.3d 687, 690 (Tex.App.--Amarillo 2020, no pet.) (if notice is properly served in accordance with Rule 21a, this creates a presumption that the notice was received by the addressee).

However, Rule 21a expressly allows a party to rebut this presumption, providing that "[n]othing herein shall preclude any party from offering proof that the document was not received, or, if service was by mail, that the document was not received within three days from the date that it was deposited in the mail, and upon so finding, the court may extend the time for taking the action required of such party or grant such other relief as it deems just." TEX.R.CIV.P. 21a(e). As the Texas Supreme Court has recognized, the presumption of service under Rule 21a is not considered "evidence," and thus, any presumption "vanishes when opposing evidence is introduced that [a document] was not received." *In re E.A.*, 287 S.W.3d 1, 5 (Tex. 2009), *quoting Cliff*, 724 S.W.2d at 780. Such opposing evidence of "nonreceipt" may consist of an affidavit from the intended recipient attesting to the fact that the notice was not received. *See Cliff*, 724 S.W.2d at 779*; see also Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 797 (Tex. 2008) (noting that the presumption may be rebutted by affidavit); *In re Estate of Check*, 438 S.W.3d 829, 834 (Tex.App.--San Antonio 2014, no pet.) (former counsel's affidavit that opposing counsel "never served, delivered to or provided" him with a copy of the opposing party's original counterclaim and that he was unaware such a document had been filed was sufficient to overcome the presumption of service); *Texaco, Inc. v. Phan*, 137 S.W.3d 763, 767 (Tex.App.--Houston [1st Dist.] 2004, no pet.) (stating that mere denial of receipt is sufficient to rebut presumption of receipt). And where such an affidavit is unrebutted or uncontested, courts have found that the

affidavit may be sufficient to establish a lack of actual notice. *See, e.g.*, *Smith v. Holmes*, 53 S.W.3d 815, 817-18 (Tex.App.--Austin 2001, no pet.) (presumption of service overcome by party's uncontested, unequivocal denial that he did not receive notice); *MM&J Investments LLC*, 602 S.W.3d at 691 (uncontroverted affidavit and testimony of party that he did not receive trial notice was sufficient to overcome presumption that notice was received).

In addition, the presumption arising from a document being placed in the mail pursuant to Rule 21a is negated when the document is returned as "unclaimed." *In re E.A.*, 287 S.W.3d at 5; *see also Rouhana v. Ramirez*, 556 S.W.3d 472, 479-80 (Tex.App.--El Paso 2018, no pet.) (finding that litigant did not receive proper notice of a trial setting pursuant to Rule 21a, where the evidence demonstrated that the court sent litigant a trial setting by certified mail, but the letter was returned as unclaimed), *citing Approximately $14,980.00 v. State*, 261 S.W.3d 182, 189 (Tex.App.-- Houston [14th Dist.] 2008, no pet.) ("Notice sent by certified mail and returned 'unclaimed' does not provide the notice required by Rule 21a."); *Etheredge v. Hidden Valley Airpark Ass'n, Inc.*, 169 S.W.3d 378, 382 (Tex.App.--Fort Worth 2005) ("a notice of hearing setting sent by certified mail and returned 'unclaimed' does not provide the notice required by Rule 21a.").

In this case, the record reflects that the county clerk sent the 20-day notice to pay the appellate costs by certified mail, addressed to the same post office box to both Triple Crown and Nevarez. And, although the record indicates that the notice was initially delivered to the post office box, the unrebutted evidence in the record demonstrates that neither Triple Crown nor Nevarez ever claimed the mail, and it was ultimately returned as "unclaimed" to the clerk's office. And finally, there is nothing in the record to contradict the affidavits submitted by Nevarez and his paralegal in which they averred that they never received the clerk's notice itself, were never

11

notified by the post office that the notice was available to pick up, and were unaware of the notice until after the county court had already dismissed the appeal.

Accordingly, we conclude that any presumption that Triple Crown received actual notice of the clerk's mailing was conclusively negated, and in the absence of any evidence to the contrary, we conclude that Triple Crown did not, as a matter of law, receive actual notice of the clerk's directive to pay the appellate costs.

### 2. *No evidence of constructive notice*

There may be circumstances, however, in which a party did not receive actual notice of a duly mailed document but the record nevertheless supports a finding that the party received constructive notice of it. For example, a court may find that the party had constructive notice of a document when the designated recipient returns it as "refused," or when there is evidence that a party or its attorney has otherwise engaged in "selective acceptance or refusal of certified mail relating to the case." *Jacobs v. Jacobs*, 448 S.W.3d 626, 632-633 (Tex.App.--Houston [14th Dist.] 2014, no pet.); *see also Rouhana*, 556 S.W.3d at 479-80 (recognizing that "refusing to accept duly mailed correspondence can constitute constructive notice if the intended recipient refuses all certified mailings, or engages in repeated instances of selective acceptance of notices."); *Approximately $14,980.00*, 261 S.W.3d at 189 ("Constructive notice may be established if the serving party demonstrates compliance with Rule 21a and presents evidence that the intended recipient engaged in instances of selective acceptance or refusal of certified mail relating to the case.").

In this case, however, there is no evidence that Triple Crown refused the certified mailing from the clerk's office and instead, as set forth above, the record establishes that it was returned to the clerk's office as "unclaimed." *See Shackelford v. Cartercopters, LLC*, No. 02-10-00414-CV,

12

2011 WL 3835638, at *4 (Tex.App.--Fort Worth Aug. 31, 2011, no pet.) (mem. op., not designated for publication) (noting distinction between "unclaimed" and "refused" mail). Further, there is nothing in the record to suggest that either Triple Crown or its attorney engaged in any other instances of selective acceptance or refusal to accept deliveries of registered or certified mail. *See In re E.A.*, 287 S.W.3d at 5-6 (finding insufficient evidence in the record to establish constructive notice where there was no evidence that party "avoided or refused delivery of the amended petition, nor that she received the certified mail notices.").

In the trial court, Ackerman argued that Triple Crown had "constructive knowledge" that it was required to pay the appellate costs, pointing out that Triple Crown acknowledged in its notice of appeal to the county court that it was obligated to pay appellate costs "[i]n accordance with Rule 143(a) of the Texas Rules of Civil Procedure" in the amount of $227. The fact that Triple Crown's attorney was aware of the legal requirement to pay appellate costs, however, is not the same as having constructive knowledge that the clerk has sent out a notice establishing the deadline for paying those costs. As explained above, the 20-day deadline for paying appellate costs is not triggered until the appellant receives the clerk's notice, and Rule 143a only allows for dismissal of an appeal after that 20-day period has elapsed. TEX.R.CIV.P. 143a. Therefore, because we have found no evidence in the record that Triple Crown received either actual or constructive notice of the clerk's notice to pay the appellate costs, the time table set forth in Rule 143a was not triggered, and accordingly, the trial court did not lose jurisdiction to hear Triple Crown's appeal.[4] Accordingly, we conclude that the trial court erred by not granting Triple Crown's motion to vacate its order of dismissal.

---

[4] Triple Crown raises three other arguments in support of its argument that the county court did not lose jurisdiction due to its failure to pay the appellate costs within the timeframe set forth in the clerk's notice: (1) whether the county clerk was required to send the notice through the e-file system; (2) whether Triple Crown was entitled to receive a second notice pursuant to Rule 506.1(g), giving it seven days to cure the failure to pay the costs; and (3) whether

Triple Crown's Issue Seven is sustained.

## IV. THE JUSTICE COURT'S ALLEGED LEGAL ERRORS

In its first six issues on appeal, Triple Crown contends that the justice court made several legal errors when it ruled in Ackerman's favor in the parties' dispute. In particular, Triple Crown argues that the justice of the peace court ignored certain provisions in the parties' contract, including a "choice of law" provision, a "mandatory venue and jurisdiction provision," a "mandatory arbitration" provision and a "mandatory damage claim substantiation" provision. And, as a corollary to these arguments, Triple Crown contends that by ignoring these provisions, the justice court improperly "re-wrote" the parties' contract, and thereby committed clear "legal error."

Regardless of the validity of these arguments, the county court had no jurisdiction to review these alleged legal errors, nor does this Court. As indicated above, appeals from justice court to county court are de novo, which means that the entire case is presented to the county court "as if there had been no previous trial." TEX.R.CIV.P. 510.10(c). Therefore, upon the filing and perfection of an appeal, the justice court's judgment is in effect vacated, and a county court may not affirm or reverse the justice court's judgment. *See Praise Deliverance Church v. Jelinis, LLC*, 536 S.W.3d 849, 854 (Tex.App.--Houston [1st Dist.] 2017, pet. denied); *Williams v. Schneiber*, 148 S.W.3d 581, 583 (Tex.App.--Fort Worth 2004, no pet.); *see generally Garza v. Chavarria*, 155 S.W.3d 252, 255 (Tex.App.--El Paso 2004, no pet.) (recognizing the de novo nature of appeals from justice court to county court). In other words, because of the de novo nature of the

Triple Crown's due process rights were violated by the lack of actual notice. Because we find that the undisputed evidence established that Triple Crown did not receive actual or constructive notice of the clerk's 20-day notice to pay the appellate costs as required by the Rules of Civil Procedure, we resolve the appeal on that basis alone, and we need not address Triple Crown's alternative arguments.

proceedings, a county court does not sit as a true appellate court, and does not review the justice court's decision for legal errors; instead, it tries the case for itself as if no ruling had ever been made in the justice court. *See Villalon v. Bank One*, 176 S.W.3d 66, 69-70 (Tex.App.--Houston [1st Dist.] 2004, pet. denied). Accordingly, neither the county court nor this Court have any basis for reviewing the alleged legal errors committed by the justice court.

Triple Crown's Issues One through Six are overruled.

## V. CONCLUSION

Because the unrebutted evidence in the record demonstrates that Triple Crown did not receive actual or constructive notice of the clerk's 20-day notice to pay appellate costs, we conclude that the county court did not lose jurisdiction over Triple Crown's appeal, and we therefore reverse the county court's order dismissing the appeal and remand the matter to the county court for further proceedings.

JEFF ALLEY, Chief Justice

September 29, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

15