# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00118-CV

**Appellants, Texas Quarter Horse Association; Texas Thoroughbred Association; Texas Horsemen's Partnership; Gillespie County Fair and Festivals Association, Inc.; Global Gaming LSP, LLC d/b/a Lone Star Park at Grand Prairie; and Sam Houston Race Park, LLC// Cross-Appellants, American Legion Department of Texas, Temple Post 133; Kickapoo Traditional Tribe of Texas; Thompson Allstate Bingo Supply, Inc.; and Moore Supplies, Inc.**

**v.**

**Appellees, American Legion Department of Texas, Temple Post 133; Kickapoo Traditional Tribe of Texas; Thompson Allstate Bingo Supply, Inc.; and Moore Supplies, Inc.// Cross-Appellees, Texas Quarter Horse Association; Texas Thoroughbred Association; Texas Horsemen's Partnership; Gillespie County Fair and Festivals Association, Inc.; Global Gaming LSP, LLC d/b/a Lone Star Park at Grand Prairie; and Sam Houston Race Park, LLC**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. D-1-GN-14-003700, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

## O P I N I O N

This proceeding presents two issues of potential significance to appellate and administrative-law practitioners. The first is whether third parties have standing to appeal from a trial-court judgment invalidating an agency rule when the affected agency has not perfected its own appeal. At least under the circumstances here, we conclude that the third parties lack standing to appeal. The second issue is whether an attempted appeal by such third parties, and no other parties, is subject to the rule requiring appellate courts to vacate lower-court judgments and dismiss

the cause, not merely the appeal, when a case becomes moot on appeal.[1] We conclude it is not. Instead, the proper remedy is to dismiss the appeal for want of jurisdiction and leave the trial court's judgment undisturbed.

## BACKGROUND

This proceeding arose from the controversy concerning the "historical racing" rules that had been adopted by the Texas Racing Commission in 2014.[2] Alleging justiciable interests deriving from perceived detrimental impact of the rules upon them, several original and intervening plaintiffs—appellees here—sued the Commission and various official-capacity defendants (collectively, the Commission Defendants) in district court to challenge the rules' legality. Among other claims and theories, appellees sought declarations under either or both section 2001.038 of the Administrative Procedure Act (APA)[3] and the Uniform Declaratory Judgments Act (UDJA)[4] that the rules exceeded the Commission's delegated authority under its

---

[1] *See, e.g.*, *Texas Foundries, Inc. v. International Moulders & Foundry Workers Union*, 248 S.W.2d 460, 461 (Tex. 1952) ("The rule has long been established . . . that when a case becomes moot on appeal, all previous orders are set aside by the appellate court and the case is dismissed"; courts do not merely "dismiss the appeal only . . . .") (citations omitted); *see also Heckman v. Williamson Cty.*, 369 S.W.3d 137, 162 (Tex. 2012) ("If a case is or becomes moot, the court must vacate any order or judgment previously issued and dismiss the case for want of jurisdiction." (citing *Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 228–29 (Tex. 1993))).

[2] *See* 39 Tex. Reg. 7573 (Sept. 19, 2014) (proposed June 27, 2014).

[3] *See* Tex. Gov't Code § 2001.038 (authorizing plaintiff who "allege[s] that [a] rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff" to assert declaratory-judgment action to determine "[t]he validity or applicability of a rule" and requiring that "[t]he state agency must be made a party to the action").

[4] *See generally* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011 (UDJA).

organic statute, the Texas Racing Act.[5] The Commission Defendants answered, and several entities that alleged justiciable interests deriving from the rules' perceived benefits for them—the appellants here—intervened as additional defendants. None of the appellants asserted a claim for affirmative relief, but instead acted solely to defend the rules' legality alongside the Commission Defendants.

The two sides subsequently filed competing motions for summary judgment on appellees' declaratory claims challenging the rules as beyond the Commission's authority under the Texas Racing Act. The district court, in relevant part: (1) sustained objections made by appellants to some of appellees' summary-judgment evidence; (2) granted appellees' summary-judgment motion; and (3) denied competing motions filed by the Commission Defendants and appellants. Appellees thereafter nonsuited all of their other pending claims so as to make the summary-judgment rulings final.[6] The trial-level litigation was concluded with a December 2014 final judgment that incorporated the aforementioned rulings and nonsuit and declared that the rules "exceed the Texas Racing Commission's authority under the Texas Racing Act . . . and are invalid."

The Commission Defendants chose not to perfect an appeal from the district court's judgment. Subsequently, consistent with an agency's statutory obligations when a rule has been declared invalid by a "final court judgment,"[7] the Commission would repeal the "historical racing"

---

[5] *See* Tex. Rev. Civ. Stat. art. 179e, §§ 1.01–18.08 (Texas Racing Act).

[6] Appellees' notice of nonsuit dismissed "all of their claims except for their claims that the Texas Racing Commission's 'historical' or instant racing rules at issue violate the Texas Racing Act, which claims are asserted under [APA] §[]2001.038, [the UDJA], and common law ultra vires."

[7] *See* Tex. Gov't Code § 2002.058(b) ("A state agency shall repeal a rule that has been declared invalid by a final court judgment. For purposes of this subsection, a court judgment is not considered final during the time that the judgment may be reversed by an appellate court.").

3

rules in March 2016.[8]  But appellants (the third parties who had intervened below as defendants in support of the rules) did timely file a notice of appeal from the district court's judgment.  We docketed that appeal as the above-captioned cause.

After appellants filed their notice of appeal, appellees filed a timely notice of cross-appeal from the district court's judgment, thereby preserving their right to challenge, if need be, the portion of the district court's judgment incorporating its adverse ruling on appellees' summary-judgment evidence.[9]  But appellees' primary response was to move to dismiss appellants' appeal (and, conditioned on that relief, appellees' own cross-appeal) for want of subject-matter jurisdiction. Appellees urged that appellants' appeal was "moot" in the absence of any appeal by the Commission Defendants.  Because the agency that had promulgated the rules was no longer attempting to defend their legality but had instead acceded to being bound by the district court's judgment, appellees reasoned, any justiciable controversy regarding the rules' validity had been concluded and appellants' appeal could have no effect on any party's rights or interests.[10]

Appellees' motion to dismiss remained pending for several months while appellants, without opposition from appellees, obtained a succession of abatements and postponements

---

[8]  *See* 41 Tex. Reg. 1683 (Mar. 4, 2016) (proposed Dec. 4, 2015).

[9]  As appellees emphasize, they sought this relief only against appellants, not the Commission Defendants, as the evidentiary ruling in question responded to objections made by appellants. Consequently, the Commission Defendants are neither appellants nor appellees in this proceeding.

[10]  Appellees also urged that the Commission was an indispensable party to the appeal with respect to the claims asserted under APA section 2001.038.  *See* Tex. Gov't Code § 2001.038(c) (requiring joinder of the state agency).  In light of our disposition of appellees' other arguments, we need not reach this narrower ground.  *See* Tex. R. App. P. 47.1.

of appellate proceedings while awaiting the outcome of further Commission action.[11]  After the Commission's recent repeal of the historical-racing rules, appellees supplemented their dismissal motion to raise that action as an additional ground for concluding that no justiciable controversy existed on appeal.

Appellants then filed a response in which they conceded that no justiciable controversy regarding the rules' validity could have survived the repeal.  But appellants attacked appellees' premise that this Court had lacked jurisdiction from the appeal's inception in the absence of any appeal by the Commission Defendants.  Appellants reasoned that they had standing to appeal the judgment even in the absence of the Commission Defendants' participation, that appellants had thereby invoked this Court's jurisdiction, and that we had possessed such jurisdiction until the controversy was finally rendered moot by the rules' repeal.  And based on that argument, appellants asserted a request for relief from the district court's judgment and its preclusive effects—they urged that this Court must vacate the district court's judgment and dismiss the cause, not merely dismiss the appeal as appellees had requested.  In support, appellants invoked the rule, noted at the outset, that appellate courts are required to vacate lower-court judgments and dismiss the cause, not merely the appeal, when a case becomes moot on appeal.  Appellees have filed a reply in which they join issue with both of appellants' contentions.

---

[11]  *Texas Quarter Horse Ass'n v. American Legion Dep't of Tex.*, No. 03-15-00118-CV, 2015 Tex. App. LEXIS 12239, at *1 (Tex. App.—Austin Dec. 2, 2015) (mem. op.) (per curiam); *Texas Quarter Horse Ass'n v. American Legion Dep't of Tex.*, No. 03-15-00118-CV, 2015 Tex. App. LEXIS 6116, at *1 (Tex. App.—Austin June 17, 2015) (mem. op.) (per curiam).

**ANALYSIS**

The parties' arguments implicate the justiciability doctrines that the Texas Supreme Court has held to derive from the Texas Constitution's open-courts and separation-of-powers provisions.[12] It is therefore helpful to begin with a brief overview of these doctrines.[13] In general, the justiciability doctrines serve to bar Texas courts jurisdictionally from issuing advisory opinions—those that "decide[] an abstract question of law without binding the parties," considered to be a proper function of the Executive rather than Judicial Branch[14]—or from granting court access to persons lacking any actual, concrete injury.[15] Under the ripeness doctrine, courts must "consider whether, *at the time a lawsuit is filed*, the facts are sufficiently developed 'so that an injury has occurred or is likely to occur, rather than being contingent or remote.'"[16] Conversely, "[t]he mootness doctrine applies to cases in which a justiciable controversy exists between the parties at the time the case arose, but the live controversy ceases because of subsequent events."[17] A justiciable

---

[12] *See, e.g.*, *Heckman*, 369 S.W.3d at 147–48 (citing Tex. Const. arts. I, § 13, II, § 1); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).

[13] The application of these doctrines presents questions of law that we review de novo. *Heckman*, 369 S.W.3d at 149–50. Further, because the doctrines implicate subject-matter jurisdiction, they may be raised at any time, including appeal, and we may (and sometimes must) consider them sua sponte. *See Texas Ass'n of Bus.*, 852 S.W.2d at 446.

[14] *See Texas Ass'n of Bus.*, 852 S.W.2d at 444.

[15] *See id.* at 444–45.

[16] *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851–52 (Tex. 2000) (quoting *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)).

[17] *Matthews v. Kountze Indep. Sch. Dist.*, ___ S.W.3d ___, No. 14-0453, 2016 Tex. LEXIS 95, at *3 (Tex. Jan. 29, 2016) (citing *Heckman*, 369 S.W.3d at 162).

controversy ceases and the case becomes moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."[18]

Standing doctrine, in turn, focuses on whether a particular party "has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome."[19] "The general test for standing in Texas requires that there '(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought.'"[20] This test, the Texas Supreme Court has elaborated, is "parallel[]" to the federal test for Article III standing, and thereby incorporates the elements of (1) "'injury in fact'" ("'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical'"); (2) a causal relationship between the alleged injury and "'the conduct complained of'"; and (3) redressability (that it is "'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision'").[21]

Justiciability remains a jurisdictional prerequisite "from the first filing through the final judgment," including any appeal.[22] Consequently, if a justiciable controversy ceases while a case is on appeal, the case is moot and the appellate court lacks subject-matter jurisdiction to act

---

[18] *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). *See also Heckman*, 369 S.W.3d at 162 ("Put simply, a case is moot when the court's action . . . cannot affect the parties' rights or interests." (citing *VE Corp. v. Ernst & Young*, 860 S.W.2d 83, 84 (Tex. 1993) (per curiam))).

[19] *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005).

[20] *Texas Ass'n of Bus.*, 852 S.W.2d at 446 (quoting *Board of Water Eng'rs v. City of San Antonio*, 283 S.W.2d 722, 724 (1955)).

[21] *Heckman*, 369 S.W.3d at 154–55 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)) (internal quotations omitted).

[22] *Id*. at 147–48 (citing *Board of Adjustment v. Wende*, 92 S.W.3d 424, 427 (Tex. 2002)).

on the merits.[23]  Likewise, an appellant must have standing to appeal a lower-court judgment, and

the appellate court lacks subject-matter jurisdiction to decide the merits of that appeal otherwise.[24]

On this record, there is no dispute and seems little question that no justiciable

controversy regarding the validity of the historical-racing rules could have survived the

Commission's repeal of them—the rules no longer exist in any form,[25] and there is no hint that

the agency will reverse course once litigation concludes[26] or that any exception to the mootness

doctrine applies.[27]  The parties' disagreement centers on whether a justiciable controversy ever

existed on appeal.  While phrasing their jurisdictional challenge in terms of "mootness," the

---

[23]  *See, e.g.*, *Lara*, 52 S.W.3d at 184.

[24]  *See, e.g.*, *State v. Naylor*, 466 S.W.3d 783, 787 (Tex. 2015) (acknowledging that courts lack subject-matter jurisdiction to determine appeal brought by an "improper party" who lacks "appellate standing"); *see also Hollingsworth v. Perry*, ___ U.S. ___, 133 S. Ct. 2652, 2661–63 (2013) (observing that Article III requirement of an "'actual controversy' persist[ing] throughout all stages of litigation" implies that standing "'must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance,'" and proceeding to analyze appellants' standing under Article III test (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997))).

[25]  *See, e.g.*, *Heckman*, 369 S.W.3d at 167 (acknowledging that "where a plaintiff challenges a statute or written policy, that challenge may well become moot if the statute or policy is repealed or fundamentally altered" (citing *Trulock v. City of Duncanville*, 277 S.W.3d 920, 925–27 (Tex. App.—Dallas 2009, no pet.); Erwin Chemerinsky, *Federal Jurisdiction* § 2.5.4, at 141–43 (5th ed. 2007))); *Texas Dep't of Health v. Long*, 659 S.W.2d 158, 160–61 (Tex. App.—Austin 1983, no writ) (holding that rule challenge was rendered moot by rules' repeal).

[26]  *Cf. Matthews*, ___ S.W.3d at ___, 2016 Tex. LEXIS 95, at *3–8 (holding that challenge to school-district policy was not rendered moot by district's cessation of policy where it was not "'absolutely clear'" that the district "will not reverse itself after this litigation is concluded" (quoting *Bexar Metro. Water Dist. v. City of Bulverde*, 234 S.W.3d 126, 131 (Tex. App.—Austin 2007, no pet.))).

[27]  *See generally Lara*, 52 S.W.3d at 184 (discussing exception where controversy is "'capable of repetition, yet evading review'" (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983))).

substantive thrust of appellees' arguments is more precisely that appellants lacked standing to bring their appeal—appellees contest whether, considering that the Commission Defendants have acceded to the district court's judgment, the judgment invades any legally protected interest of appellants for which their appeal could provide remedy.[28]

Although considerations of mootness and standing are closely related,[29] the distinction proves to be highly significant under Texas law in determining the appropriate remedy at the appellate level. "[W]hen a case becomes moot on appeal," as appellants suggest, "[t]he rule has long been established" by the Texas Supreme Court that "all previous orders are set aside by the appellate court and the case is dismissed."[30] However, if the defect is more precisely a lack of appellate standing, the Texas Supreme Court has indicated that the proper remedy is simply to dismiss the appeal.[31]

This distinction is consistent with the underpinnings of the rule of vacating lower-court judgments when a case becomes "moot on appeal." That rule is not a jurisdictional imperative,

---

[28] *See, e.g.*, *Hollingsworth*, ___ U.S. at ___, 133 S. Ct. at 2662 (emphasizing, with reference to appellate standing, that "a litigant must seek relief for an injury that affects him in a 'personal and individual way'" and "must possess a 'direct stake in the outcome' of the case" (quoting *Lujan*, 504 U.S. at 560 n.1; *Arizonans for Official English*, 520 U.S. at 64)).

[29] *See Lara*, 52 S.W.3d at 184 (observing that "[i]f a case becomes moot, the parties lose standing to maintain their claims").

[30] *Texas Foundries, Inc.*, 248 S.W.2d at 461 (citing *Freeman v. Burrows*, 171 S.W.2d 863 (Tex. 1943); *Danciger Oil & Ref. Co. v. Railroad Comm'n*, 56 S.W.2d 1075 (Tex. 1933); *McWhorter v. Northcutt*, 58 S.W. 720 (Tex. 1900)). *Accord, e.g.*, *Speer*, 847 S.W.2d at 228–29; *Raborn v. Davis*, 795 S.W.2d 716, 717 (Tex. 1990) (per curiam); *United Servs. Auto. Ass'n v. Lederle*, 400 S.W.2d 749, 749 (Tex. 1966) (per curiam). *See also International Ass'n of Machinists v. Federated Ass'n of Accessory Workers*, 130 S.W.2d 282, 283 (Tex. 1939) (terming the rule already "long established in this jurisdiction").

[31] *See Naylor*, 466 S.W.3d at 787 ("Standing is a component of subject-matter jurisdiction . . . . Consequently, an appeal filed by an improper party must be dismissed.") (citations omitted).

9

per se,[32] but is a procedural or remedial directive that is founded on two closely related policy concerns that may arise when a case becomes moot during the pendency of an appeal. The first concern is that dismissing only the appeal in those circumstances may be unfair to the appellant because it causes the lower-court judgment to become final and preclusive—effectively affirming it—without affording the appellant the opportunity to be heard on the merits.[33] A second concern, closely related to first, is that dismissing the appeal in those circumstances achieves the effect of an affirmance in a moot case.[34] Both of these policies thus presume the initial

---

[32] As appellees point out, the Texas Supreme Court, through the Texas Rules of Appellate Procedure, has afforded appellate courts discretion to dismiss a pending appeal without disturbing lower court judgments when the proceeding becomes moot by virtue of settlement. *See* Tex. R. App. P. 42.1 & cmt. to 2002 change; *id.* R. 43.2; *Caballero v. Heart of Tex. Pizza, L.L.C.*, 70 S.W.3d 180, 180–81 (Tex. App.—San Antonio 2001, no pet.) (per curiam); *cf. Panterra Corp. v. American Dairy Queen*, 908 S.W.2d 300, 300–01 (Tex. App.—San Antonio 1995, no writ), *modified by Caballero*, 70 S.W.3d 180 (concluding, under earlier version of appellate rules and rule that "[w]hen a cause becomes moot on appeal, all previous orders and judgments should be set aside and the cause, not merely the appeal, dismissed," that it was required to vacate lower-court judgment following appellate-level settlement (quoting *Freeman*, 171 S.W.2d at 863)). The Texas Supreme Court's promulgation of Rule 42.1 belies any notion that it views mootness arising on appeal as giving rise retroactively to some sort of jurisdictional defect in prior lower-court judgments. *See also Lederle*, 400 S.W.2d at 749 (stating that "[n]o reason is made known to us and none appears in the record to cause us to vary from the rule that a moot cause should be dismissed," perhaps implying that appellate courts may possess some discretion in applying the rule).

[33] *See, e.g.*, *International Ass'n of Machinists*, 130 S.W.2d at 283 ("To dismiss the appeal would be to leave undisturbed the judgment of the lower court and thereby, in effect, affirm same without according to the appealing parties a hearing upon the merits of their appeal."); *Danciger*, 56 S.W.2d at 1076 ("In order that plaintiff in error may not be prejudiced in any subsequent proceeding by a judgment which this court has refused to consider on its merits, we think a proper disposition of the case would be to reverse the judgment of the trial court and the Court of Civil Appeals and to dismiss the cause.") (citations omitted); *see also Panterra*, 908 S.W.2d at 301–02 (Duncan, J., dissenting) (similarly distilling this underlying jurisprudential policy from case law).

[34] *See, e.g.*, *Lederle*, 400 S.W.2d at 749 ("To dismiss the applications [for writ of error] would permit the judgment of the Court of Civil Appeals to become a final judgment in a moot case."); *see also Panterra*, 908 S.W.2d at 301–02 (Duncan, J., dissenting) (identifying same underlying policy in case law).

10

Emphasizing that the rule is not a jurisdictional imperative, appellees suggest that Texas law is equivalent to the equitable principles that federal courts apply to determine the remedy when a case becomes moot on appeal. To summarize the federal jurisprudence in this area, the United States Supreme Court has held that "vacatur"—i.e., remand to the lower court with instructions to vacate its judgment after the case becomes moot on appeal—is an "exceptional" equitable remedy whose availability depends principally on the extent to which the mootness is attributable to the party seeking relief from the judgment. *See generally U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 22–29 (1994). Vacatur tends to be favored, the Supreme Court has explained, where "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance" beyond the party's control, as such a party "ought not in fairness be forced to acquiesce in the judgment," *id*. at 25, and be barred by former-adjudication doctrines from relitigating the issues at some future time. *Id*. at 22–23 (vacatur "'clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance'" (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950))). Vacatur is similarly favored "where mootness results from the unilateral action of the party who prevailed in the lower court." *Id*. at 23. In contrast, vacatur tends to be disfavored when mootness is attributable to the party seeking relief from the judgment. *See id*. 25–29 (holding that voluntary settlement did not present the "extraordinary circumstances" justifying vacatur). Providing such a party the remedy of vacatur, the Supreme Court has observed, effectively facilitates "a refined form of collateral attack on the judgment" pursued in lieu of the appeal on the merits. *Id*. at 26–27. In terms of the equities, such a "case stands no differently than it would if jurisdiction were lacking because the losing party failed to appeal at all." *Id*. at 25. The Supreme Court has held that an appeal having a defect of parties or standing falls into the latter category, *see Karcher v. May*, 484 U.S. 72, 81–83 (1987), and the Fifth Circuit has held that a municipality's repeal of an ordinance amounted to "voluntary action" that should preclude vacatur of a lower-court judgment invalidating that ordinance. *See Houston Chronicle Publ'g Co. v. City of League City*, 488 F.3d 613, 619–20 (5th Cir. 2007).

While there are some parallels between the Texas rule and the federal jurisprudence, *see Marshall v. Housing Auth. of San Antonio*, 198 S.W.3d 782, 788–89 (Tex. 2006) (observing, in context of analyzing applicability of collateral-consequences exception to mootness doctrine, that "[o]ne purpose of vacating the underlying judgment if a case becomes moot during appeal is to prevent prejudice to the rights of parties when appellate review of a judgment on its merits is precluded," and citing "see also" to *Bonner Mall*), and the Texas Supreme Court has frequently looked to federal jurisprudence in applying substantive justiciability principles, that court has of yet never adopted the federal-equity based approach for determining the remedy when a case becomes moot on appeal. *See, e.g.*, *Speer*, 847 S.W.2d at 227–30 (applying rule so as to vacate lower-court judgment in appeal held to be mooted by litigants' voluntary action); *Freeman*, 171 S.W.2d at 863 (holding that court of civil appeals erred in failing to vacate lower-court judgment in case that became moot on appeal; no reference to causes of mootness); *see also* Brandon T. Allen, *Note: A New Rationale for an Old Practice: Vacatur and the Rules of Professional Responsibility*, 76 Tex. L. Rev. 661, 675–76 (1998) (surveying Texas precedents and noting absence of consideration of

existence of a justiciable controversy on appeal, and neither is implicated where the appellant lacks standing to invoke the appellate court's jurisdiction in the first place. In this respect, an appeal brought by an appellant lacking standing is the legal equivalent of no appeal having been perfected at all, or if a party having standing had filed its notice of appeal too late—our jurisdiction over the merits is never invoked.[35] We would add that if this sort of "mootness on appeal" is subject to the rule that we must vacate lower-court judgments, little would remain of standing doctrine, the finality of judgments, or conventional appellate procedure, as lower-court judgments would be vulnerable to being vacated by appellate courts at the behest of even strangers to the litigation.

Accordingly, whether the proper remedy here is to dismiss the appeal only, as appellees urge, or to vacate the district court's judgment and dismiss the case, as appellants maintain, ultimately turns on whether appellants had standing to bring their appeal. Appellants suggest that it was sufficient that they intervened below (and "without objection from Appellees," they emphasize), thereby "became parties to the suit for all purposes," and were ultimately named in a judgment that rejected their arguments. Appellants similarly emphasize that section 2001.901 of the APA authorizes a "party"—a term that the APA defines generally as "a person or state agency named or admitted as a party"[36]—to "appeal a final district court judgment under this

whether mootness stemmed from litigant's "voluntary" actions). Accordingly, unless and until the Texas Supreme Court instructs us otherwise, we must decline appellees' invitation to follow the federal jurisprudence favoring them. *See Panterra*, 908 S.W.2d at 300–01 (similarly observing that *Bonner Mall* "is not binding precedent [on Texas courts] because the issue decided was one of federal procedural law [and] does not apply to state courts' application of state procedural law").

[35] *Cf. Texas Comm'n on Envtl. Quality v. Bonser-Lain*, 438 S.W.3d 887, 891 & n.1 (Tex. App.—Austin 2014, no pet.) (explaining that even while subject-matter jurisdiction of trial court can be challenged at any time, such challenges can be raised only before appellate court that possesses subject-matter jurisdiction).

[36] Tex. Gov't Code § 2001.003(4).

chapter in the same manner provided for civil actions generally."[37] Accordingly, appellants deduce,

section 2001.901 empowered them to appeal the district court's adverse judgment on the declaratory

claims asserted under APA section 2001.038, as these are claims "under this chapter," the APA.

Appellants' arguments are ultimately unavailing. While appellate standing typically

extends only to those who were parties before the trial court,[38] party status per se is not

controlling—the ultimate inquiry is whether the appellant possesses a justiciable interest in obtaining

relief from the lower court's judgment.[39] And in the posture of this case on appeal, appellants lack

any such interest for reasons similar to those that controlled our analysis in our recent *Bonser-Lain*

decision—appellants have not asserted, nor likely could assert, any basis to compel the Commission

to adopt or maintain historical-racing rules if the agency does not wish to do so.[40] The Commission's

[37] *Id.* § 2001.901(a).

[38] *See, e.g.*, *Naylor*, 466 S.W.3d at 787 ("appellate standing is typically afforded 'only to parties of record'" (quoting *Gunn v. Cavanaugh*, 391 S.W.2d 723, 724–25 (Tex. 1965))).

[39] *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843–44 (Tex. 2000) (explaining that appellate standing requires that party's own interests must be prejudiced by alleged error and that it "may not complain of errors that do not injuriously affect it or that merely affect the rights of others"). *See also Diamond v. Charles*, 476 U.S. 54, 68 (1986) (where Illinois authorities had not appealed lower-court judgment invaliding state law, private party who had intervened below in support of law lacked standing to appeal; mere "status as an intervenor below, whether permissive or as of right, does not confer standing sufficient to keep the case alive in the absence of the State on this appeal").

[40] *Bonser-Lain*, 438 S.W.3d at 893–95 (holding that neither APA nor Water Code provided a right to judicial review from agency's denial of rulemaking petition, and observing that "[i]ndeed, no Texas court has ever held that an agency's refusal to promulgate rules is reviewable by courts"). *See also Diamond*, 476 U.S. at 65 (observing that private party's attempt to appeal lower-court judgment invalidating state law where State had not appealed amounted to "an effort to compel the State to enact a code in accord with [the appellant's] interests," and that "only the State has the [requisite] kind of direct stake . . . in defending the standards embodied in that code") (internal quotations and citations omitted); *accord Hollingsworth*, ___ U.S. at ____, 133 S. Ct. at 2668 ("We have never before upheld the standing of a private party to defend the constitutionality of a state statute when state officials have chosen not to. We decline to do so for the first time here.").

13

accession to the district court's judgment represented the Commission's determination that it will no longer have historical-racing rules. Absent any right to alter that agency decision, appellants' challenge to the district court's judgment, which would necessarily focus on whether the now-hypothetical rules would be within the Commission's statutory authority, reduces to a request for an advisory opinion, the antithesis of a justiciable claim.[41]

APA section 2001.901 does not change the analysis. To the extent this statute could be read to authorize an appeal by a "party" lacking a justiciable interest, it would be unenforceable.[42] We must instead construe "party" in section 2001.901 to extend no farther than what the Texas Constitution allows—to presume or incorporate the jurisdictional requirement that the "party" possess a justiciable interest and standing to appeal.[43]

---

[41] *See Texas Ass'n of Bus.*, 852 S.W.2d at 444–45.

[42] *Finance Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 582 n.83 (Tex. 2013) (observing that APA section 2001.038, by requiring that plaintiff "allege[] that [a] rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff[,] . . . does not purport to set a higher standard than that set by the general doctrine of standing, and it cannot be lower, since courts' constitutional jurisdiction cannot be enlarged by statute" (citing *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 462 (Tex. 2011))); *see also In re Lazy W Dist. No. 1*, ___ S.W.3d ___, No. 15-0117, 2016 Tex. LEXIS 410, at *15 (Tex. May 27, 2016) ("For the Legislature to attempt to authorize a court to act without subject matter jurisdiction would violate the constitutional separation of powers." (citing Tex. Const. art. II, § 1)).

[43] *See Norwood*, 418 S.W.3d at 582 n.83; *see also, e.g.*, *In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 380 (Tex. 1998) ("We should, if possible, interpret [a] statute in a manner that avoids constitutional infirmities."); *cf. Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 179 (Tex. App.—Austin 2013, no pet.) (similarly holding that plaintiff "must meet the constitutional standing requirements to seek judicial relief regarding the [agency] proceedings—and the bare fact that he could be said to have 'standing' before the agency [i.e., "party" status there] is not enough" (citing *Fort Bend Cty. v. Texas Parks & Wildlife Comm'n*, 818 S.W.2d 898, 899 (Tex. App.—Austin 1991, no writ))).

Because appellants lacked standing to bring their appeal, the proper remedy is for us to dismiss this appeal for want of subject-matter jurisdiction without disturbing the district court's judgment.[44] To this extent, we grant appellees' motion to dismiss appellants' appeal—and, in turn, appellees' own cross-appeal—for want of subject-matter jurisdiction. We deny appellants' request to vacate the district court's judgment also.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Field

Dismissed for Want of Jurisdiction

Filed: June 8, 2016

---

[44] *See Naylor*, 466 S.W.3d at 787.