# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00528-CV

**The Texas Education Agency and Mike Morath,[1]
Commissioner of Education, in his Official Capacity, Appellants**

**v.**

**Academy of Careers and Technologies, Inc. d/b/a
Academy of Careers and Technologies Charter School, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-15-002879, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## O P I N I O N

After the Texas Education Agency (TEA) and Mike Morath, Commissioner of Education, notified the Academy of Careers and Technologies, Inc. d/b/a Academy of Careers and Technologies Charter School (ACT) that TEA intended to revoke ACT's charter, ACT sued TEA and filed a motion for temporary injunction to prevent the revocation. The trial court granted ACT's motion and denied TEA's plea to the jurisdiction. Consistent with this Court's recent opinion in *Texas Education Agency v. American YouthWorks, Inc.*, Nos. 03-14-00283-CV, 03-14-00360-CV, 2016 WL 3230661 (Tex. App.—Austin June 10, 2016, no pet. h.), we conclude that the trial court lacked subject-matter jurisdiction. We will therefore vacate the trial court's order granting the

---

[1] Michael L. Williams was the Commissioner of Education when this appeal was filed. His successor, Mike Morath, has been automatically substituted. *See* Tex. R. App. P. 7.2(a).

temporary injunction, dissolve the temporary injunction, and render judgment dismissing ACT's suit for want of jurisdiction.

## BACKGROUND

ACT is a nonprofit corporation that operates an open-enrollment charter school authorized under chapter 12, subchapter D of the Texas Education Code. *See generally* Tex. Educ. Code §§ 12.101–.137. In December 2014, TEA sent ACT a letter notifying ACT that it intended to revoke ACT's charter. The letter indicated that ACT had been assigned the following performance ratings:

- 2011–2012 financial accountability rating of "Substandard Achievement";

- 2012–2013 financial accountability rating of "Substandard Achievement";

- 2013–2014 financial accountability rating of "Substandard Achievement"; and

- 2013–2014 academic accountability rating of "Improvement Required."

The letter also noted that these ratings subjected ACT to mandatory revocation. *See id.* § 12.115(c) (providing that TEA commissioner "*shall* revoke the charter of an open-enrollment charter school" if school receives unsatisfactory performance or financial accountability ratings for three preceding school years) (emphasis added).

ACT exercised its right to obtain informal review of TEA's decision to revoke its charter. *See* 19 Tex. Admin. Code § 157.1123 (2014) (Tex. Educ. Agency, Informal Review). In February 2014, following an informal review, TEA informed ACT that it would proceed with

2

revocation, which would be effective August 21, 2015, with the school to cease operations no later than June 30, 2015. ACT then submitted a petition for review of this decision, which was referred to the State Office of Administrative Hearings (SOAH). *See* Tex. Educ. Code § 12.116(c) ("A decision by the commissioner to revoke a charter is subject to review by [SOAH]."). In May 2015, the SOAH administrative law judge (ALJ) issued an order upholding TEA's decision to revoke ACT's charter. *See id.* § 12.116(c)(1) (providing that "the [ALJ] shall uphold a decision by the commissioner to revoke a charter unless the judge finds the decision is arbitrary and capricious or clearly erroneous").

In July 2015, ACT filed this suit seeking declaratory and injunctive relief. ACT complained of alleged errors in the accountability ratings on which TEA based its revocation decision and argued that: TEA's conduct was arbitrary and capricious; the governing regulatory scheme is overbroad; Education Code sections 12.115 and 12.116 are unconstitutionally retroactive; the charter-revocation and school-closing procedures fail to satisfy due process and amount to an unconstitutional taking; the use of prior-year data for calculation of the following year's accountability ratings was an ultra vires action; TEA's adoption of rules limiting appeals to errors attributable to TEA's calculations was ultra vires; and ACT's right to open courts had been violated. In response, TEA filed a plea to the jurisdiction, contending that sovereign immunity barred ACT's suit because the legislature has not waived immunity. Among other things, TEA's plea argued that an ALJ's review of a charter-revocation decision is final and is not subject to judicial review in a district court, *see id.* § 12.116(c)(2) (providing that "a decision of the [ALJ] under this subsection

3

is final and may not be appealed"), and that ACT had no constitutionally protected property interest in its charter.

The trial court determined that ACT's suit presented important constitutional issues, that ACT would suffer irreparable harm if TEA revoked ACT's charter, and that sovereign immunity did not bar ACT's suit to determine its constitutional rights. Accordingly, the trial court denied TEA's plea to the jurisdiction and temporarily enjoined TEA from revoking ACT's charter, taking over ACT's bank accounts or other property, or shutting down ACT's school. TEA now appeals both the denial of its plea to the jurisdiction and the grant of a temporary injunction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(4), (8) (allowing interlocutory appeal from order granting temporary injunction or denying governmental unit's jurisdictional plea).[2]

## STANDARD OF REVIEW

The trial court's subject-matter jurisdiction may be challenged through a plea to the jurisdiction. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a court has subject-matter jurisdiction is a question of law we review de novo. *Miranda*, 133 S.W.3d at 226. The plaintiff has the burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction. *Id.*

---

[2] ACT filed a motion to dismiss this appeal, contending that this Court lacks jurisdiction because TEA filed its notice of appeal before the trial court signed its order granting ACT's motion for temporary injunction and denying TEA's plea to the jurisdiction. However, TEA filed both a premature notice of appeal before the trial court signed its order and an amended notice of appeal after the court signed its order. Even disregarding the amended notice, TEA's prematurely filed notice of appeal is now effective to vest jurisdiction in this Court. *See* Tex. R. App. P. 27.1(a); *Jackson v. Wright*, No. 03-10-00391-CV, 2010 WL 5575924, at *1 (Tex. App.—Austin Jan. 14, 2011, no pet.) (per curiam) (mem. op.). We therefore deny ACT's motion to dismiss the appeal.

4

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). We review a trial court's grant of a temporary injunction for an abuse of discretion, *id.*, but review its construction of controlling law de novo, *see City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000).

## DISCUSSION

### *Texas Education Agency v. American YouthWorks, Inc.*

This Court's recent decision in *Texas Education Agency v. American YouthWorks, Inc.* informs our analysis in this case. *See American YouthWorks*, 2016 WL 3230661. In *American YouthWorks*, organizations that held the charters for several open-enrollment charter schools sued TEA to prevent the revocation of their charters. The district court temporarily enjoined TEA from revoking the charters, and TEA appealed. *Id.* at *7. This Court concluded that the district court lacked subject-matter jurisdiction and therefore vacated the district court's orders, dissolved the injunctions, and rendered judgment dismissing the charter holders' suits for want of jurisdiction. *Id.* at *19.

In determining that the district court lacked jurisdiction over the charter holders' claims, this Court concluded that: the charter holders did not have a constitutionally protected property interest in their charters, *see id.* at *12; even assuming that the charter holders had some constitutionally protected property interest in their charters, their due-process claims and their claims that Education Code sections 12.115 and 12.116 are unconstitutionally retroactive still were not viable, *see id.* at *13–14; sovereign immunity barred the charter holders' ultra-vires claims because

they would require retrospective relief, *see id.* at *15–16; and the charter holders' ultra-vires rule challenges fail because the Uniform Declaratory Judgments Act (UDJA) does not waive sovereign immunity for rule challenges and because those claims sought retrospective relief, *see id.* at *16.

On the basis of our analysis in *American YouthWorks*, which we will not repeat in detail,[3] we conclude that ACT lacks a constitutionally protected property interest in its charter, its ultra-vires claims would require retrospective relief, ACT received due process through TEA's informal review and an appeal to SOAH, and the UDJA does not waive sovereign immunity for ACT's rule challenges. These conclusions require us to hold that the majority of ACT's claims do not waive TEA's sovereign immunity. However, ACT makes several claims not addressed in *American YouthWorks*, and we will consider these claims below.

**Section 12.128 and ACT's Takings Claim**

In addition to arguing that it has a constitutionally protected property interest in its charter, an argument we have rejected above, ACT also asserts that TEA's seizure of ACT's bank accounts and other property, which would allegedly occur when its charter is revoked, would constitute an unconstitutional taking and a denial of due process. ACT further argues that Education Code section 12.128, which allows the state to seize any property paid for with state funds if a school's charter is revoked, is unconstitutional on its face.[4]

---

[3] *See* Tex. R. App. P. 47.1.

[4] Section 12.128 provides:

(a) Property purchased or leased with funds received by a charter holder . . .

(1) is considered to be public property for all purposes under state law;

6

We first consider ACT's facial challenge to the constitutionality of section 12.128. "A statute is presumptively constitutional." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 170 (Tex. 2004). "In a facial challenge to a statute's constitutionality, we consider the statute as written, rather than as it operates in practice." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000).

On its face, section 12.128 directs the state to take possession only of charter-school property that was purchased or leased with state funds. *See* Tex. Educ. Code § 12.128(c). Charter schools are creatures of statute that are an integral part of Texas's public-education system and may be considered governmental units. *See LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 76 (Tex. 2011) (noting that charter schools "are indisputably part of the Texas public-education

---

(2) is property of this state held in trust by the charter holder for the benefit of the students of the open-enrollment charter school; and

(3) may be used only for a purpose for which a school district may use school district property.

....

(c) The commissioner shall:

(1) take possession and assume control of the property described by Subsection (a) of an open-enrollment charter school that ceases to operate; and

(2) supervise the disposition of the property in accordance with law.

Tex. Educ. Code § 12.128(a), (c). We understand ACT to be challenging the constitutionality of subsection (c), which requires the commissioner to take possession of charter-school assets that were purchased with state funds if a charter school ceases to operate.

7

system"); *id.* at 78 (noting that charter schools' status and authority "derive wholly from the comprehensive statutory regime"); *id.* at 82 ("Open-enrollment charter schools are governmental units for Tort Claims Act purposes . . . ."). As such, charter schools exercise state authority, *see HWY 3 MHP, LLC v. Electric Reliability Council of Tex.*, 462 S.W.3d 204, 210 (Tex. App.—Austin 2015, no pet.) ("open-enrollment charter schools should be treated as governmental units because they are given taxpayer money to use when accomplishing the public goal of educating children and are statutorily entitled to services that public schools receive"), and they are also subject to strict state oversight and control, *see LTTS Charter School*, 342 S.W.3d at 80 ("[The charter school's] use of state-funded property and state funds is also carefully circumscribed."). As the Texas Supreme Court has pointed out, part of the careful circumscription of a charter school's authority is that "[p]roperty purchased or leased with state public funds . . . is held in trust for the benefit of the students and 'may be used only for a purpose for which a school district may use school district property.'" *LTTS Charter School*, 342 S.W.3d at 80 (footnote omitted) (quoting Tex. Educ. Code § 12.128(a)(3)). Because the state provides funds to charter schools to be used exclusively for a public purpose, there is nothing unconstitutional about its taking possession of property that the charter school purchases with those funds—"what the Legislature giveth, the Legislature may taketh away." *See Ivey v. State*, 277 S.W.3d 43, 47 (Tex. Crim. App. 2009).

Our conclusion that section 12.128 is constitutional is bolstered by the fact that, as discussed above, charter schools have no constitutionally protected property interest in their charters, and it is their charters that allow them to receive state funds and purchase or lease property with those funds to use for public purposes. It is further bolstered by the fact that an open-enrollment

school charter is a contract freely entered into by the state and the charter holder.  *See* Tex. Educ.

Code § 12.112 ("A charter for an open-enrollment charter school shall be in the form of a written

contract signed by the commissioner and the chief operating officer of the school.").  The state, as

a party to the contract, may condition the grant of a charter on a promise to return to the state

property that was funded by the state and used for state purposes, as section 12.128 requires.[5]  In fact,

the Education Code provides that, by accepting public funds, charter holders are agreeing to be

bound by statutory requirements.  *See id.* § 12.1071 (providing that charter holder who accepts state

funds "after the effective date of a provision of this subchapter agrees to be subject to that provision,

regardless of the date on which the charter holder's charter was granted" and "agrees to accept all

liability under this subchapter").  Moreover, as this Court concluded in *American YouthWorks*,

the charter-revocation procedures established by statute and administrative rule provide notice and

an opportunity to be heard to charter holders and thereby satisfy the requirements of due process.

*See American YouthWorks*, 2016 WL 3230661 at *13.

To the extent that ACT also argues that TEA would commit an unconstitutional

taking by seizing its property once the charter is revoked, we conclude that this takings claim is not

---

[5]  ACT's charter document is labeled "Contract for Charter."  It recites that the "contract is executed" between the Texas State Board of Education and ACT.  The contract for charter also provides that "[t]he Board in its sole discretion may modify, place on probation, revoke or deny timely renewal of the charter for cause," and it lists as causes for such adverse actions "failure to satisfy generally accepted accounting standards or fiscal management" and "failure to comply with an applicable law or rule."  *See Texas Educ. Agency v. American YouthWorks, Inc.*, Nos. 03-14-00283-CV, 03-14-00360-CV, 2016 WL 3230661, at *12 (Tex. App.—Austin June 10, 2016, no pet. h.) ("Under long-established Supreme Court jurisprudence, a benefit is not a protected entitlement if government officials may grant or deny it in their discretion . . . .  The charters here each include provisions that explicitly acknowledge and agree to the State's unlimited discretion over the charters.").

yet ripe. "[T]akings claims, like other causes of action, must be ripe and they must be brought in a court with subject matter jurisdiction over the claim." *City of Hous. v. Guthrie*, 332 S.W.3d 578, 592 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citation omitted). "Under the ripeness doctrine, courts must consider whether, *at the time a lawsuit is filed*, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Texas Quarter Horse Ass'n v. American Legion Dep't of Tex.*, No. 03-15-00118-CV, 2016 WL 3230664, at *3 (Tex. App.—Austin June 8, 2016, no pet. h.) (internal quotation marks omitted). "The ripeness doctrine emphasizes the need for a concrete injury for a justiciable claim to be presented and examines when [an] action may be brought. It focuses on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Bridgeport Indep. Sch. Dist. v. Williams*, 447 S.W.3d 911, 917 (Tex. App.—Austin 2014, no pet.) (citation and internal quotation marks omitted).

Here, ACT argues that "close-out directives" sent from TEA indicate that the agency is "attempting to take title to [ACT's] real property, personal property, and cash on hand." However, those directives do not indicate that TEA plans to seize control of any assets that were not purchased or leased with state funds. Indeed, one directive specifies that ACT must transfer to TEA title in real property "held by the charter holder that was either purchased or leased using state funds." As discussed above, section 12.128 requires the state to seize such assets. We will not assume that TEA plans to take property that was *not* purchased or leased using state funds. If, upon revocation of ACT's charter, TEA does exceed its statutory authority and takes property that was not purchased or leased using state funds, then ACT may have a ripe takings claim—but not now.

10

Because we determine that ACT's constitutional challenge to section 12.128 is not viable[6] and that its takings claim is unripe, we conclude that these claims do not waive TEA's sovereign immunity.[7]

**Open Courts**

ACT also alleges in its petition that "the TEA and Commissioner's rules" violate the open-courts provision of the Texas Constitution by "denying them the right to challenge a closure by making a SOAH determination final without appeal."

"The Texas Constitution's open courts guarantee provides that '[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.'" *Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778, 783 (Tex. 2007) (quoting Tex. Const. art. 1, § 13). "Proof of an open courts violation requires two elements: (1) a cognizable, common-law claim that is statutorily restricted, and (2) the restriction is unreasonable or arbitrary when balanced against the statute's purpose and basis." *Id.*

Here, ACT's petition does not identify a cognizable common-law claim that could be proof of an open-courts violation. At most, ACT's petition may be read to allege that its due-

---

[6] *See Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011) (considering substance of equal-protection claim in plea-to-jurisdiction context and explaining that Secretary of State retained immunity from suit unless plaintiffs pleaded "viable claim"); *American YouthWorks*, 2016 WL 3230661, at *14 (holding charter holders' constitutional claims were not viable and therefore barred by sovereign immunity).

[7] For similar reasons, we hold that ACT's request for a declaration that "it was improper and a violation of ACT's property and constitutional rights to designate it as a 'high risk'" does not waive TEA's immunity. ACT has no constitutionally protected property interest in its charter, and, to the extent it challenges TEA's rules regarding "high risk" entities, the UDJA does not waive immunity for rule challenges and the relief ACT seeks is retrospective. *See American YouthWorks*, 2016 WL 3230661, at *16.

process rights were violated because it could not appeal the ALJ's order upholding TEA's decision to revoke its charter. However, as discussed above, ACT has no constitutionally protected property interest in its charter and, even if it did, review by SOAH satisfied the requirements of due process. Moreover, "there is no common-law cause of action for judicial review of an agency's administrative act." *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 524 (Tex. App.—Austin 2010, no pet.) (holding that Water Code did not violate open-courts provision by prohibiting judicial review of final agency order). Therefore, ACT's open-courts claim fails and does not waive sovereign immunity.

## CONCLUSION

We conclude that none of ACT's claims waive TEA's sovereign immunity. Therefore, the trial court lacked subject-matter jurisdiction and erred in denying TEA's plea to the jurisdiction and in granting ACT's motion for temporary injunction. Accordingly, we vacate the trial court's order granting the temporary injunction, dissolve the temporary injunction, and render judgment dismissing ACT's suit for want of jurisdiction.

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin, and Field

Vacated and Rendered

Filed:   July 13, 2016

12