

# NUMBER 13-25-00393-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF M.J., A CHILD

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 5 OF NUECES COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Silva, Cron, and Fonseca**
**Memorandum Opinion by Justice Cron**

The trial court terminated Mother's[1] parental rights to M.J., designated the Texas Department of Family and Protective Services as the child's permanent managing conservator, and continued the child's placement with her foster parents.[2] Mother

---

[1] We will use descriptive nouns and initials to identify the people involved in this case. *See* TEX. R. APP. P. 9.8.

[2] Father's parental rights were also terminated, but he has not appealed the termination order.

preferred a different placement for M.J., an option the trial court considered, but ultimately rejected. By a single issue on appeal, Mother complains that the trial court erred by permitting the foster parents to intervene because they lacked standing and because their "last-minute" intervention was prejudicial. The Department responds that, because she failed to challenge the termination of her parental rights, Mother has no justiciable interest in the trial court's decision to allow the intervention.[3] Because we agree with the Department, we dismiss the appeal for want of jurisdiction.

## I.    BACKGROUND

M.J. was born in October 2023. A few days later, the Department filed its "Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child-Relationship." The termination proceeding was originally set for trial on October 28, 2024, but the trial court extended the dismissal date and rescheduled the trial for May 1, 2025, after T.J., Father's adult child and M.J.'s half-sister, came forward as a potential placement on the eve of the original trial setting. *See* TEX. FAM. CODE § 263.401(a), (b). The purpose of the extension was to provide the Department and M.J.'s attorney ad litem an opportunity to evaluate the viability of this familial placement in the event M.J. was not returned to her parents.

On April 28, 2025, the foster parents filed a petition seeking leave to intervene. They alleged that they had standing under §§ 102.003(a)(12) and 102.004(b) of the Texas

---

[3] The Department argues in the alternative that, regardless of whether the foster parents had standing, any potential error was harmless because it had no bearing on the trial court's jurisdiction to terminate Mother's parental rights or to appoint the Department as the child's permanent managing conservator. *See* TEX. R. APP. P. 44.1(a) (regarding reversible error in civil cases). The foster parents have also filed a brief arguing in part that they had statutory standing to intervene and that the trial court did not otherwise abuse its discretion in granting them leave to intervene. *See* TEX. FAM. CODE §§ 102.003(a)(12), 102.004(b), (b–1).

Family Code because M.J. had been in their care since November 2, 2023, and "both parents are highly likely to have their parental rights terminated." They asked for the opportunity to participate in the proceedings and express their view that it was in M.J.'s best interest to remain with them, either through "unrelated adoption or unrelated conservatorship."

When the case was called for trial, M.J.'s attorney ad litem informed the trial court that T.J. had yet to produce certain medical records that were necessary for him to evaluate T.J. as a potential placement. Because T.J. expressed a willingness to produce the records, the ad litem asked the trial court to begin the trial and then recess it until a later date. Mother and Father, who both favored T.J. as the placement if M.J. was not returned to them, agreed this was the best way forward. The trial court concurred.

The trial court then took up the foster parents' request to intervene. No evidence was presented during the hearing. The foster parents argued that they had standing to intervene under the Texas Family Code and that it was in M.J.'s best interest for them "to be a part of this case, if only to make sure the Court has all available information when making those really important decisions." They further explained that they became concerned by the prospect that M.J. could be taken from them and placed with T.J.

Mother and Father opposed the intervention. Mother said that she was "raising a defense of laches" because the foster parents "waited too long to enter" the case. She suggested "that all foster parents know that whenever children come into their possession that they may be returned one day," and therefore, their eleventh-hour filing constituted an unreasonable delay. She further argued that, although the foster parents were not

strangers to the proceedings, "[i]f they had been a party earlier, we could have just done normal discovery like anywhere else. So, we've been deprived of that option." Finally, Mother felt it was prejudicial to permit the foster parents to intervene because it would provide "them an independent right for appeal and in other matters that even go beyond this trial."

The foster parents replied that "this is their first placement," they did not have the benefit of counsel to advise them of their rights, and "[t]hey got involved as soon as they knew to." They stressed that they were not attempting to delay the proceedings and that "[i]f there's any information that any party needs from [them], they will happily give it over today to make sure that everybody has what they need."

The attorney ad litem stated that he was not opposed to the intervention because he failed to see the harm alleged by Mother. He observed that "the respondent parents have known that the foster parents are potential witnesses in this case and could have conducted whatever discovery they wanted while the case has been pending." Likewise, the Department was not opposed to the intervention. At the conclusion of the hearing, the trial court announced that it was granting the request because "it's in the [child's] best interest that the intervention be allowed." The trial court's decision was not reduced to writing, and no written findings of fact or conclusions of law were made with respect to the intervention.

A bench trial began that day but, as previously agreed, the trial court called a recess shortly after the Department's caseworker began testifying. The trial resumed and concluded on June 11, 2025. Despite the foster parents' offer to produce "any information

4

that any party needs from [them]," there is no indication from the record that Mother sought discovery from the foster parents while the trial was recessed.

The foster parents participated in the trial through their counsel, but they did not testify. Mother and Father testified that should their rights be terminated, they preferred for M.J. to be placed with T.J. instead of the foster parents. Mother clarified that she viewed any placement with T.J. as "temporary" and that she expected T.J. to place M.J. in her care once she was "back on [her] feet."

T.J., who had never met M.J., testified that it was important for the child to be placed with family, but she was amenable to a transition period before becoming M.J.'s sole caregiver. The Department had concerns about T.J.'s criminal record and mental health history. According to the Department's caseworker, T.J.'s prior felony conviction for retaliation would prevent her from obtaining "licensing or assistance for [M.J.]" even though the incident occurred approximately fifteen years earlier. Also, at the time of trial, T.J. was being treated for "bipolar II, generalized anxiety disorder, and insomnia disorder," and both the Department and M.J.'s attorney ad litem had concerns that T.J. was not taking her medications as prescribed. On the other hand, the Department felt that the foster parents had provided M.J. with a loving and stable home environment for the entirety of her life and would continue to do so in the future.

The Department's recommendation to the trial court was to terminate Mother's and Father's parental rights, to name the Department permanent managing conservator, to continue M.J.'s placement with the foster parents, and for the foster parents to adopt M.J. at a later date. The foster parents made the same recommendation. The attorney ad litem

5

agreed that it was in M.J.'s best interest to continue her placement with the foster parents, but he was open to the idea that, with a longer track record of complying with her medication, T.J. could become an appropriate placement.

Ultimately, the trial court terminated Mother's parental rights on (D), (E), and (N) grounds, appointed the Department as permanent managing conservator, continued the placement with the foster parents, and placed the case "on the adoption track." *See id.* §§ 161.001(b)(1)(D), (E), (N), (b)(2), 161.207(a). This appeal ensued.

## II.    ANALYSIS

"Standing is implicit in the concept of subject matter jurisdiction." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). "Subject matter jurisdiction is essential to the authority of a court to decide a case." *Id.* "The mootness doctrine applies to cases in which a justiciable controversy exists between the parties at the time the case arose, but the live controversy ceases because of subsequent events." *Matthews v. Kountze Indep. Sch. Dist.*, 484 S.W.3d 416, 418 (Tex. 2016). For example, an appeal becomes moot when the appellant no longer has "a legally cognizable interest in the outcome." *Tex. Dep't of Fam. & Protective Servs. v. N.J.*, 644 S.W.3d 189, 192 (Tex. 2022). "Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests." *Heckman v. Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012). "Any ruling on the merits of a moot issue constitutes an advisory opinion, which we lack jurisdiction to issue." *In re J.J.R.S.*, 627 S.W.3d 211, 225 (Tex. 2021).

"[A]n order terminating the parent-child relationship divests the parent and the child of all legal rights and duties with respect to each other," except for the child's right to

6

inherit. TEX. FAM. CODE § 161.206(b). "By failing to appeal the trial court's termination findings, [Mother] is bound by them" and thus lacks "standing to complain of the foster parents' intervention in the termination suit." *In re R.A., Jr.*, No. 07-08-00884-CV, 2009 WL 77853, at *2 (Tex. App.—Amarillo Jan. 13, 2009, no pet.) (mem. op.); *see In re M.M.S.*, No. 11-15-00009-CV, 2015 WL 4732904, at *1 (Tex. App.—Eastland July 30, 2015, no pet.) (mem. op.) ("We are of the opinion that the mother lacks standing to assert the complaints made in both of her issues because she has not contested the termination of her parental rights and because she has no justiciable interest in the intervenors' access to the child. By failing to challenge the termination of her parental rights, the mother has become a former parent with no legal rights with respect to [the child]."); *In re O.J.P.*, No. 01-21-00163-CV, 2021 WL 4269175, at *30 (Tex. App.—Houston [1st Dist.] Sept. 21, 2021, no pet.) (mem. op.) ("Having no legal rights with respect to O.J.P., we hold that mother lacks standing to challenge the portion of the trial court's order appointing [the Department] as sole managing conservator of O.J.P."); *In re Y.V.*, No. 02-12-00514-CV, 2013 WL 2631431, at *2 (Tex. App.—Fort Worth June 13, 2013, no pet.) (mem. op.) ("Having no legal rights with respect to Y.V., Father lacks standing to attack the portion of the termination order appointing the Department as permanent managing conservator of Y.V."). In other words, although a justiciable controversy existed between the Department and Mother when the suit was filed, the sole issue Mother raised on appeal became moot because she no longer has "a legally cognizable interest in the outcome." *See N.J.*, 644 S.W.3d at 192.

Although the Department complains about Mother's lack of standing, saying the

appeal has become "moot," it asks us to "affirm" the trial court's termination order. We are aware that our sister courts have "affirmed" termination orders under similar circumstances. *See In re R.A., Jr.*, 2009 WL 77853, at *2; *In re M.M.S.*, 2015 WL 4732904, at *2. The proper remedy, however, is to simply dismiss the appeal. *See Tex. Quarter Horse Ass'n v. Am. Legion Dep't of Tex.*, 496 S.W.3d 175, 185 (Tex. App.—Austin 2016, no pet.) ("Because appellants lacked standing to bring their appeal, the proper remedy is for us to dismiss this appeal for want of subject-matter jurisdiction without disturbing the district court's judgment."); *County of El Paso v. Ortega*, 847 S.W.2d 436, 442 (Tex. App.—El Paso 1993, no writ) (dismissing appeal because appellant lacked standing to complain about the trial court's judgment).

## III.    CONCLUSION

Accordingly, without considering the merits, we dismiss Mother's appeal for want of jurisdiction.

JENNY CRON
Justice

Delivered and filed on the
22nd day of January, 2026.